**Carmen IRIZARRY, Plaintiff-Respondent,**

v.

**Irving ANKER, Individually and as Chancellor of the Board of Education, Julius R. Rubin, Individually and as Chairman of the Board of Examiners, and the Board of Education of the City of New York, Defendants-Appellants.**

No. 1098, Docket 76–7628.

United States Court of Appeals, Second Circuit.

Argued May 23, 1977.

Decided July 25, 1977.

Renee Modry, New York City (W. Bernard Richland, Corp. Counsel, L. Kevin Sheridan, New York City, of counsel), for defendants-appellants.

Joan E. Goldberg, New York City, for plaintiff-respondent.

Before FEINBERG and DANAHER *, Circuit Judges, and DOOLING, District Judge.**

DANAHER, Senior Circuit Judge:

Defendants have appealed from a judgment and order[1] entered by Honorable

---

\* Senior Circuit Judge of the District of Columbia Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

\*\* Of the Eastern District of New York, sitting by designation.

1. That order directed the immediate reinstatement of Plaintiff's license "to remain in condi-

tional form until July 31, 1977." The order continued that by that date, Plaintiff "shall have completed at least two (2) credits in instruction of methods and materials on a prekindergarten level" in an institution approved by the Board of Examiners; and it was further provided that if Plaintiff shall fail satisfactorily

Jack B. Weinstein, District Judge. The judge explained the ultimate effect of his decision to be

> that the plaintiff is as of this moment a certified teacher of bilingual early childhood classes in Spanish, and she may be re-employed as such a teacher in any school which will have her in the City of New York.

As Judge Weinstein had sought a clarification of Plaintiff's theory of the case, her counsel asserted that Plaintiff's rights of free speech had been violated in that she had spoken out against the manner in which the bilingual program had been planned and conducted, and that Plaintiff had been denied her license without due process of law.[2]

After patient consideration of the background, the judge announced his findings which, simply stated, may enable us to glean pertinent perspective. We may paraphrase:

> Plaintiff has failed to prove that she had been punished for the exercise of her constitutional rights of free speech in criticism of the program.
>
> The Court is not convinced by a preponderance of the evidence that she was denied her position as a teacher under the Certificate of Competency.[3]
>
> There had been a complete failure of proof to show that funds were available so that payment for this teaching could continue under a Certificate of Competency under Title VII.
>
> Accordingly, Plaintiff's cause of action based upon a claim of "violation of her rights to free speech" was denied.

We are satisfied that his ruling was clearly correct.

Turning to the remaining aspect of Plaintiff's claim, the judge next identified Plaintiff's certificate dated January 22, 1975, file No. 469113, as a conditional certificate "clearly issued subject to the plaintiff having received at least three semester hours on instructional methods on the pre-kindergarten and primary level." That certificate specified that Plaintiff was being licensed to serve as a Bilingual Teacher Early Childhood Classes (Spanish) "subject to the By-Laws of the Board of Education" and to the conditions, if any, under which the issuance of this license had been authorized. The license could be used for reference as a substitute until such time as the teacher might receive a regular appointment on the eligible list.

The Board of Examiners had outlined eligibility requirements for the position sought by the Plaintiff. Such an applicant was bound to have studied instructional methods and materials on the pre-kindergarten, kindergarten and primary level. Professional study of education must have been included or supplemented by basic training in the methods and techniques of teaching reading skills.

Plaintiff in November 1975 received notice that her status would be terminated in June 1976 since she had failed to meet the prescribed eligibility requirements. She requested a statement of reasons for that decision and learned that she was deemed

---

to complete that requirement, "her license will be cancelled as of August 1, 1977."

2. The Court: You could have appealed that through an Article 78 proceeding.

    [Counsel]: That's true, but this is an unemployed schoolteacher.

    *See generally Lombard v. Board of Education of City of New York*, 502 F.2d 631 (CA 2 1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

    Plaintiff turning to the federal courts had here sought relief claiming reinstatement of her license as a Bilingual teacher, reinstatement to her position as a teacher at P.S. 166, and back pay. No back pay was here awarded.

3. As in part recited on its face, a Certificate of Competency is expressly made subject to certain conditions among which are:

    that the certificate is subject to termination by the Chancellor at any time

    that funds are available in the program under which assignment has been sought, and that the certificate does not confer tenure upon the holder, that employment is temporary in nature and will terminate at the end of the program for which the certificate was issued or at the end of the fiscal year during which the certificate was issued, whichever comes first.

lacking adequate credits in the methods course needed for validation of her license. She then procured from an assistant professor of Psychology at Herbert H. Lehman College a letter wherein he suggested that his course, "Psychology of Exceptional Children," [4] "is more geared to the methods of the educational and teaching processes than it is to a traditional liberal arts course in psychology. In reality I feel that the course should be taught in the Department of Education rather than the Department of Psychology. My course is a three semester course and Miss Irizarry achieved a grade of 'A' in the course. . . ."

His letter continued "I feel comfortable in saying that the course was taught as though it was planned in methods of education and psychology involved in educating exceptional children." [5] Plaintiff submitted that letter to the chairman of the committee on appeals.[6] It was accorded no weight.

Thereafter the Board of Examiners notified Plaintiff that she had failed to adduce evidence to establish that she had completed the mandated requirements, and her appeal was dismissed. This action followed.

As the district judge contemplated the record developed before him, he took "judicial notice of the fact that there is often a wide discrepancy between description in the bulletin and course content." Except for the professor's unacceptable letter, there had been no evidence to establish that the course described in the undergraduate bulletin of Herbert H. Lehman College could be viewed as the equivalent of training in instructional methods and in the techniques of teaching reading skills.

In view of the unavailability of the professor, the judge assumed, that had the professor testified, it would have been established that Plaintiff "reasonably believed that she had met all the conditions." Indeed, it is entirely likely that, based on his own appraisal of circumstances, Plaintiff's experience, during three successive years, with a "satisfactory" teacher's rating each year, was entitled to greater weight than proof that she had taken some scholastic courses in instructional methods. He must have attached some importance to the fact that the principal of P.S. 166 had expressly requested that Plaintiff be reassigned to teach at her school.

The assistant administrative director to the Chairman of the Board of Examiners had testified that Plaintiff was "lacking two semester hours in education courses." It further developed through questioning from the judge, that the director had not gone into the school to see what actually was taught. After receipt of the letter from the professor, there had been no reconsideration of the earlier decision on Plaintiff's purported training inadequacy. "The only criteria we used was the official course description in the catalogue."

---

**4.** The Lehman College undergraduate bulletin identified the course thus:

PSY 218: Psychology of Exceptional Children. 3 hrs; 3 crs. Special problems in training and adjustment of children who differ markedly from the normal; mentally retarded, neurologically impaired, emotionally disturbed, physically handicapped, socially and culturally deprived, and gifted children. The Board of Examiners had rejected the proffered course as the equivalent of or a substitute for the Board's requirement of special training in educational methods.

**5.** It developed that the Assistant Professor was ill and had not been called to testify.

**6.** The Board of Examiners had published "Eligibility Requirements For License As Bilingual Teacher Of Early Childhood Classes (Spanish)" from which we quote:

"*Courses in general psychology or in adult behavior are not acceptable. Courses other than adult psychology, or child psychology, or adolescent psychology taken in the psychology department of a college are generally not acceptable.* Six semester hours in instructional methods and materials on the pre-kindergarten, kindergarten and primary level must be included in the 24 semester hours . . . [which] must include or be supplemented by 6 semester hours in the methods and techniques of teaching reading skills." (Italics in original).

Perhaps, had an expanded hearing been ordered with the professor actually testifying, he might have shown his course was indeed an exception from those deemed *generally* "not acceptable." See discussion, *infra,* of the judge's assumptions.

The judge elicited that a course at Lehman College entitled Method and Material in Early Childhood, if pursued, "would unquestionably qualify the applicant for this [educational] requirement" but that it was too late on November 8, 1976, to enroll. Plaintiff thus would have to register for that course for the February semester at Columbia or any other accredited college.

The judge simply concluded that Plaintiff had been misled into thinking she had qualified. He noted that her achievements had been creditable,[7] and (without invidious appraisal), that she and her problems had become bogged down in a bureaucratic swale.

Confronted by a situation lacking constitutional or statutory imperfection, but fully convinced that this Plaintiff was entitled to relief, the perceptive judge observed, "This is a court of equity. We exist to take care of special circumstances, I have taken care of them."

So it was that, regarding Plaintiff as a "talented teacher" whose plight had evolved in the manner we have detailed, Judge Weinstein entered the order here under review. He undoubtedly anticipated that the school authorities would view the Plaintiff's problem as he did and would co-operate. He concluded, "I think we ought to rectify the situation and move ahead." Instead of dismissing the case, the able district judge[8] sought to see done that which he thought should have been done. We might well wish we could deal with the problem in the same manner, but we can not do so.

After all, the only federal question is whether Plaintiff was accorded due process, as specified in *Berns,* Note 8, *supra.* The Board's policy of relying on catalogue descriptions was not an unreasonable attempt to avoid time-consuming, evidentiary hearings on the actual content of all sorts of courses in numerous schools from year to year. The Board's refusal to inquire beyond the catalogue description was not a deprivation of due process. In the absence of constitutional defect, the federal courts cannot intervene, even though the equities clearly favor Miss Irizarry.

Accordingly, we must reverse with directions that the complaint be dismissed. Our order will so provide.

---

7. He must have had in mind that she early had sensed that her class (less than 50% "Spanish"), really needed instruction in the American mode of life, and the use of English rather than Spanish, as essentials to life in their environment. Even though Plaintiff lacked tenure, she had continued teaching for some weeks without salary as she awaited funding of the project in which she had been engaged. The judge surely was aware of her dedication and of the scholastic grades she had achieved. Specifically he credited her testimony as to her efforts to clarify her status.

8. Certainly he knew of the case law applicable here for he had mentioned *Berns v. Civil Service Com'n, City of New York,* 537 F.2d 714 (CA 2 1976). There, at 717 this court had noted that where

. . . the question is unrelated to enforcement of her due process rights, no independent federal ground exists for us to usurp the state's function . . . . As this court "is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies" (citation omitted) we must decline to instruct state agencies as to what constitutes compliance with their own regulations.

*See generally* cases cited in *Berns* and compare *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) reversing 525 F.2d 334 (CA 2 1975); and *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 285, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).