Ellen GIBBONS, Plaintiff,

v.

BOARD OF EDUCATION OF the CITY OF NEW YORK, Community School Board No. 9, The City of New York and United Federation of Teachers, Defendants.

No. 81 Civ. 129.

United States District Court,
E. D. New York.

May 19, 1982.

A. Lawrence Washburn, New York City, for plaintiff.

Allen G. Schwartz, Corp. Counsel of City of New York (John C. Brennan and Debra Jaret, New York City, of counsel), for defendants Bd. of Educ., Community School Bd. No. 9.

McLAUGHLIN, District Judge.

This is an action for confirmation of an arbitration award, for damages caused by wrongful dismissal in violation of the Fourteenth Amendment, and for damages arising from unfair representation by the defendant union. The record reflects that only the Board of Education and the Community School Board have been served.[1] They now move to dismiss on jurisdictional grounds.

THE FACTS

Plaintiff, a teacher, was employed by the Board of Education (the "Board") in a school supervised by Community School Board No. 9 from 1971 until June 1975. She received tenure in 1973. In September 1975, her union, the United Federation of Teachers (the "Union"), went out on strike.

At that time, a striking public school teacher could be penalized under New York's Taylor Law. *See* N.Y. Civil Service Law § 210(2)(f) (McKinney's 1975).

Two months later, plaintiff, and other teachers who participated in the strike, were stripped of tenure and were put on one year's probation, pursuant to N.Y. Civil Service Law § 210(2)(f). Nevertheless, she was allowed to continue as a teacher and in June 1976, she received a satisfactory rating for her performance during the period from November 1975 through June 1976. In November, 1976, plaintiff and other similarly situated teachers were fired without a hearing.

The Union then filed a grievance on behalf of these teachers, claiming that Article 21–C–2 [2] of the collective bargaining agreement between the Board and the Union required that the probationary teachers be given a hearing, prior to their discontinuance as provided by section 2590-j 7 [3] of the Education Law. Eventually, the Union demanded arbitration of that issue. The Board sought to stay arbitration, but this was eventually denied by the New York Court of Appeals.

The arbitration was held and, on January 15, 1980, the arbitrator issued the following award:

The Board is hereby directed to reinstate the grievants to the positions and status held as of the time they were notified of the discontinuance of their services, without any loss of seniority. If the Board adheres to the decision that the services of the grievants, who had been on one year Taylor Act probation, or any of them, should be discontinued it shall so notify the grievants or particular grievants, and the Union, and shall duly inau-

---

**1.** Neither the City of New York nor the United Federation of Teachers have appeared.

**2.** Article 21–C–2 provides:

Teachers on probation who have completed at least 3 years of service on regular appointment in the school shall be entitled, with respect to the discontinuance of their probationary service, to the same review procedures as are established for tenured teachers under section 2590–j–7 of the Education Law.

**3.** Section 2590–j 7 provides in essence that teachers who have completed the full probationary period shall not be terminated except after a hearing and by the affirmative vote of a majority of all the members of the community board, together with the right to counsel and cross-examination and a right to secure a copy of the charges and specifications.

gurate the review procedures under Section 2590–j–7 of the Education Law.

The Board is directed, furthermore, to make whole any grievant who regains her or his tenure after the above procedures have been complied with or waived, by compensating her or him for the difference between what she or he has earned since her or his services were discontinued and what she or he would have earned had she or he been retained in service up to the time she or he regains tenure.

The arbitrator retains jurisdiction should any issue arise with respect to the remedy above provided.

The Board notified the plaintiff in June, 1980 that she was reinstated, but immediately fired her again, without pay, pending a review. Hearing procedures were drawn up specifically for the discharged teachers that differed in several ways from those provided in section 2590–j 7. On February 17, 1981, the Board notified the plaintiff that her discontinuance hearing would be held on March 11 and 12. Meanwhile, a dispute arose as to what hearing procedures would be used, i.e., those enumerated in section 2590–j 7 or those specifically drawn up for the discharged teachers, and the propriety of the Board's procedure of reinstating then summarily firing the teachers pending the review. In February 1981, in *Schachter v. Community School Board District 24*, N.Y.L.J., February 19, 1981 (N.Y. Co.Sup.Ct. August 16, 1981), the court ruled essentially that the section 2590–j 7 procedures should be used. Plaintiff then requested a postponement of her hearing pending appeal of the *Schachter* decision.

Finally, on October 14, 1981, the arbitrator issued a supplementary opinion and award, ordering the immediate reinstatement of the teachers, pending review, which provided in relevant part:

The reinstatement and back pay provisions of the award required the Board to reinstate all eligible grievants forthwith to the positions and status they held as of the time they were notified of the discontinuance of their services as of November 30, 1976. The matter of their entitlement to back pay from the date of dismissal to the date of their reinstatement was left open subject to the resolution that would follow of whether, after the appropriate procedures were complied with, their tenure was restored as of the date of their dismissal. Any eligible grievant who is unsuccessful in the Section 2590–j–7 hearing and/or in the pursuit of legal remedies outside of the collective bargaining agreement, will have no further rights against the Board. However, in conformity with the award the eligible grievants should have been immediately restored to the payroll awaiting the outcome of the appropriate Section 2590–j–7 hearing, if any, to be scheduled by the Board.

This obligation by the Board to compensate the eligible grievants for the period commencing with the issuance of the award on January 15, 1980 is independent of the determination of whether they or any of them are entitled to back pay for the period between the date of their dismissal and the date of the award on January 15, 1980. That question, as indicated above, will be resolved either as a result of the successful outcome for the grievants of the Section 2590–j–7 hearings, if held, or the waiver or other legal annulment of such hearings, in either of which events back pay shall be granted to the date of dismissal.

On April 2, 1982, this Court received a letter from counsel for the Board that it "intends to return plaintiff, Ms. Gibbons, to an active assignment and to pay her back pay, less any appropriate set-offs, from January 15, 1980, the date of the arbitrator's first award, until the present." Thus, the only relief still requested by plaintiff is her back pay prior to January 15, 1980 and $10,000 from defendant Union for mental suffering.[4] With respect to the outstanding

---

4. Because issue has not been joined with respect to the Union, this claim is not before the Court. Moreover, to the extent that she has until October 14, 1982 to confirm the arbitra-

tor's supplementary opinion and award, her claim against the Union for failure to confirm has been mooted.

claim for back pay, the arbitrator's supplementary opinion and award of October 14, 1981 makes clear that her right to it will depend upon the outcome of her section 2590–j 7 hearing.[5] If she is successful, she will be entitled to back pay; if not, she will not be entitled to back pay prior to January 15, 1980, and the Board will be entitled to discharge her.

DISCUSSION

■ Defendants' claim that this Court lacks jurisdiction under the Fourteenth Amendment is without merit. While it is true that a probationary employee does not ordinarily have a property interest entitling him to a termination hearing under the Fourteenth Amendment (*see Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977)), a collective bargaining agreement may give him a contract right to such a hearing. *See Perry v. Sindermann*, 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972). The rulings of the arbitrator in the state forum make clear that the plaintiff has a right to a hearing, as well as to immediate reinstatement. Accordingly, this Court has federal question jurisdiction over the issues.[6]

At the same time, however, it appears clear that the state court and arbitration proceedings have obtained for plaintiff most of the relief she seeks. Assuming the Board reinstates her, the only remaining issue will be her entitlement to back pay prior to January 15, 1980.

According to the terms of the arbitrator's October 14, 1981 award, her entitlement depends on whether she succeeds at the very hearing she seeks to compel in this action. At her own request, her hearing was postponed until the *Schachter* appeals determined which procedures are to be used at her hearing. The *Schachter* decision by the Second Department failed to clarify which procedure should be used but the arbitrator has retained jurisdiction over this dispute.

■ Because arbitration is the preferred means for resolving labor disputes, this Court is not the proper forum for plaintiff's claims. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976) ("Courts are not to usurp those functions which collective bargaining contracts have properly 'entrusted to the arbitration tribunal'", quoting *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960)). Moreover, because state law and the arbitrator's decisions are controlling on the issue of plaintiff's entitlement to a hearing, this Court should abstain and "the teacher should be left to resort to state courts on the questions arising under state law." *Perry v. Sindermann*, 408 U.S. 593, 604, 92 S.Ct. 2694, 2717, 33 L.Ed.2d 570 (1972) (Burger, C. J. concurring). Indeed, at every turn thus far, arbitration has resulted in favorable decisions for the plaintiff. Accordingly, plaintiff's action is dismissed, without prejudice. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

SO ORDERED.

---

5. On May 3, 1982, the Appellate Division rendered a decision in the *Schachter* case. The Second Department ordered that the plaintiff-teacher there be reinstated and be given back pay from the date of his discontinuance in 1976. The court did this on the ground that the Board waived its right to conduct a probation review as provided in the arbitrator's August 1980 award. The Second Department, however, failed to clarify which procedures would be used in any hearings conducted pursuant to that award. *Schachter v. Community School Board Dist. # 24*, Dkt. No. 3448E (2d Dept. May 3, 1982).

6. Because this issue is dispositive of defendants' motion, the Court expresses no view as to the other jurisdictional arguments raised.