Marvin M. WEINSTEIN, Plaintiff,

v.

UNIVERSITY OF ILLINOIS, Trustees of the University of Illinois, Henri R. Manasse, Jr., T. Donald Rucker, Elmore H. Taylor, David J. Belsheim, Richard A. Hutchinson and Jesse E. Stewart, Defendants.

No. 85 C 7771.

United States District Court, N.D. Illinois, E.D.

Feb. 20, 1986.

See also, D.C., 630 F.Supp. 635.

Edward H. Salomon, Chicago, Ill., for plaintiff.

Carla Rozycki, Keck, Mahin & Cate, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Before the Court is defendants' motion to dismiss plaintiff's complaint under

§§ 1983 and 1985, the First, Fifth and Fourteenth Amendments to the United States Constitution, and pendent state law theories. Defendants' motion alternatively prays for summary judgment on plaintiff's complaint. For the reasons stated herein, defendants' motion to dismiss is granted.

## I. FACTS

Plaintiff Marvin M. Weinstein is a former assistant professor in the Department of Pharmacy Administration, College of Pharmacy of the University of Illinois at Chicago. Defendant University of Illinois is a public corporation being a state supported institution of higher learning. Defendant Trustees of the University of Illinois are elected trustees of the University of Illinois. Additional defendants are as follows: Henri R. Manasse, Dean of the College of Pharmacy; T. Donald Rucker, Department Head of the Department of Pharmacy Administration; Elmore H. Taylor, Associate Dean for administrative services within the College of Pharmacy; David J. Belsheim, Director of Continuing Education within the College of Pharmacy; Richard A. Hutchinson, head of the Department of Pharmacy Practice and Director of Hospital Pharmacy Services of the University of Illinois Hospital; Jesse E. Stewart, faculty member of the College of Pharmacy and former Chairman of the Department of Pharmacy Administration.

From September 1973 to September 1980, plaintiff was employed by defendant trustees as an instructor in the then Department of Pharmacy. In September 1980, plaintiff received a promotion to the rank of assistant professor in the Department of Pharmacy Administration, and remained in that position until his termination in August 1985. The promotion commenced plaintiff's position in the "tenure track," a six-year probationary period at the end of which a faculty member is either denied or granted tenure. Plaintiff's employment was at all times pursuant to a series of definite term contracts, which by their terms incorporated the University of Illinois Statutes and General Rules Concerning University Organization and Procedure.

In accordance with University of Illinois regulations, all tenure track employees are subject to departmental "mid-term" reviews, intended to gauge a tenure-candidate's progress in teaching ability, research and public service. In the spring of 1983 and again in 1984, the results of plaintiff's mid-term reviews were negative. Following the 1984 evaluation, the University issued to plaintiff a terminal contract for the 1984–85 academic year, with notice that his contract would not be renewed following August 31, 1985.

Plaintiff alleges that both reviews were conducted in an arbitrary and capricious manner, in violation of University guidelines and procedures. The termination, plaintiff further alleges, interrupted his scholarly activities, thereby denying him "academic freedom."

Additionally, plaintiff contends that from 1983 to 1985 defendants interfered with and misappropriated data and a report written by plaintiff concerning a continuing education program conducted by the Department of Pharmacy Administration. In support of this allegation, plaintiff states that the initial idea to institute the program was his, that he was primarily responsible for collecting data emanating from the program, and that plaintiff was to write a scholarly paper concerning the program and submit it for publication with plaintiff named as primary author. Plaintiff concludes that by using this same data to compose a paper with defendant Belsheim named as primary author, defendants misappropriated plaintiff's work product and violated his "academic freedom."

From these allegations, plaintiff sets forth two grounds for the denial of his civil rights: (1) violation of the due process clause of the Fifth and Fourteenth Amendments; and (2) violation of his First Amendment right to academic freedom. Plaintiff additionally sets forth two pendent state law theories: (1) breach of contract; and (2) violation of the Illinois Re-

view of Personnel Records Act, Ill.Rev. Stat. ch. 48, Pars. 2001 *et seq.*

## II. DISCUSSION

A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). As a corollary to this rule, a district court must take all well-pleaded facts in plaintiff's complaint as true.

### A. *Due Process Claims*

#### 1. *Wrongful Termination*

Plaintiff avers that the 1983 and 1984 mid-term reviews and the subsequent decision to terminate his position were conducted in contravention of stated University procedures. Defendants argue that the evaluation procedures were adequately applied. Moreover, defendants contend that plaintiff's nontenured status and employment pursuant to definite term contracts makes him ineligible for due process protection.

In order to state a due process violation, plaintiff must show a property or liberty interest in his employment. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The existence of a property interest is determined by reference to state law. *Id.* at 577, 92 S.Ct. at 2709.

■ In a case factually similar to this case, the Seventh Circuit Court of Appeals held that a nontenured assistant professor lacked the requisite property interest in his position necessary to establish a claim for due process. *McElearney v. University of Illinois at Chicago Circle Campus*, 612 F.2d 285 (7th Cir.1979). In *McElearney*, plaintiff sued the University for failure to grant him tenure despite oral assurances from his department head and other indicia that tenure would be forthcoming. The court noted that McElearney's employment was pursuant to a series of definite term contracts which incorporated Article X of the University's *Statutes:*

An appointment for a definite term does not carry any guarantee or implication that the Board of Trustees will renew the appointment even though the appointee may have discharged his duties satisfactorily. An appointment for a definite term, if accepted, must be accepted with this stipulation.

*Id.* at 290. Based on this provision, the court held that "[a]s a probationary faculty member, under § 1(b)(6) of Article X, plaintiff has no property interest in continued employment and no due process protections attach." *Id.*

In the instant case, plaintiff was at all times a probationary staff member, employed pursuant to a series of definite term contracts. Both plaintiff and defendants stipulate that these contracts incorporated by their terms the University of Illinois *Statutes* and General Rules. Article X, § 1(b)(6) of the *Statutes*, identical to the provision cited in *McElearney*, clearly defeats plaintiff's property interest claim. Plaintiff is unable to show an expectation of continued employment with the University and hence no due process protections attach.

■ Nor does plaintiff possess a liberty interest in his position. The Supreme Court has constructed a four-part "stigma-plus" test which must be satisfied before a liberty interest in employment will be recognized. First, the plaintiff must show that the reasons offered for defendants' decision to dismiss are so severe as to impose a "stigma" on plaintiff and thereby foreclose future employment opportunities. *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Second, plaintiff must show that these reasons have been "publicized," or disseminated to the general public by defendants. *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Third, plaintiff must have challenged the validity of defendants' assertions and alleged that they are false. *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). Finally, the stigma allegedly imposed upon plaintiff

must be accompanied by a concurrent loss of a state-created right or status. *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

In the present case, plaintiff fails the stigma-plus test on several grounds. Plaintiff does not contend, nor does the court find, that the mid-term reviews were publicized, that plaintiff alleged them to be false, or that plaintiff suffered a concurrent loss of a state-created status or right.

### 2. *Continuing Education Data and Report*

Plaintiff alleges that defendants violated his constitutional right to due process through their alleged misappropriation of the data, analysis and report compiled by plaintiff for the College of Pharmacy's Continuing Education Clerkship program. Plaintiff contends that his position as a member of the academic faculty conferred upon him some special "scholarly" status which bestowed exclusive rights to all research projects in him alone. Defendants counter that plaintiff's efforts surrounding the program were part of his regular duties in the College's Continuing Education program and as such constituted property of the University.

Article II, § 9 of the General Rules Concerning University Organization and Procedure governs copyright policy within the University community. Pertinent provisions of the section state:

> (b) *Ownership:* Ownership in copyrightable works produced by authors who are University staff members or students shall remain with the authors except in the following situations where ownership of all rights in copyrightable works produced shall belong to the University:
>
> \*   \*   \*   \*   \*   \*
>
> (3) Works created as a specific requirement of employment or as an assigned University duty. Such requirements may be contained in a job description or an employment agreement which designates the content of the employee's University work. If such requirements or duties are not so specified, such works

will be those for which the topic or content is determined by the author's employment duties and/or which are prepared at the University's instance and expense, that is, when the University is the motivating factor in the preparation of the work.

Plaintiff contends that no reference to the program was contained in his job description and thus he should be considered "owner" of the data, analysis and report. However, defendants correctly argue that the "requirements or duties *may* " be included in the job description. The provision is optional, not mandatory. Moreover, plaintiff's work product appears to fall within the parameters of the second sentence of (b)(3). Plaintiff's complaint, affidavit and dossiers submitted for the mid-term reviews all refer to projects undertaken as part of his employment responsibilities with the Continuing Education department. The Clerkship program data and report are no different from these previous activities which clearly arose from his employment requirements. Finally, plaintiff does not refute that the material in question was produced at the University's expense and upon the direction of his superiors. Plaintiff therefore possesses no ownership interest in the Clerkship program data, analysis or report and no due process rights attach. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

### B. *First Amendment Claims*

Plaintiff alleges that the termination of his employment interrupted his progress in scholarly activity, including pursuit of his doctoral degree and the completion and publication of the Clerkship program report. The dismissal, plaintiff contends, interfered with his "academic freedom" and thus violated his First Amendment rights.

An individual may not be terminated from a position of public employment for the exercise of speech or activity protected by the First Amendment. *Perry v. Sindermann,* 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). Essential to establishing a claim on these grounds is a

showing that the activity pursued by the employee is worthy of constitutional safeguards and that it was the exercise of these rights which motivated the employer to terminate his position. *See Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City School Dist. Bd. of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In *Mt. Healthy,* the Supreme Court held that the employee bears the initial burden of showing that the speech or activity in which he was engaged was "protected" within the meaning of the First Amendment. The employee must further establish that this same activity motivated the employer to dismiss him. The burden then shifts to the employer to show, by a preponderance of the evidence, that the same decision to dismiss would have been reached even in the absence of the protected conduct. 429 U.S. at 287, 97 S.Ct. at 576.

In *Mt. Healthy,* a nontenured high school teacher sued the school board following his termination for relaying the contents of an intraschool memorandum to a local radio station. The court acknowledged that plaintiff's phone call to the radio station constituted protected speech and that the call had, at least in part, prompted plaintiff's dismissal. Nevertheless, the Court noted plaintiff's history of objectionable behavior over the course of his employment at the school and remanded the case to the district court for a determination as to whether the defendant had shown by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Id.* at 287, 97 S.Ct. at 576. *See also Knapp v. Whitaker,* 757 F.2d 827 (7th Cir.1985).

In *Connick,* the Supreme Court set forth a test to determine when a public employee's speech is worthy of First Amendment protection. In *Connick,* an assistant district attorney alleged that she had been fired for distributing a questionnaire among her fellow employees and that the questionnaire constituted constitutionally

protected activity. The court held that the document, concerning office morale, transfer policy and the level of confidence in office superiors was not the work of a "citizen [speaking] upon matters of public concern," but rather addressed "matters only of personal concern." 461 U.S. at 147, 103 S.Ct. at 1690. Absent the identification of some "matter of public concern," the court further held that "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id. See also Knapp v. Whitaker,* 757 F.2d 827 (7th Cir.1985).

■ The *Connick* and *Mt. Healthy* tests both focus attention upon the content of the individual's speech or other activity to determine whether it warrants First Amendment protection. In this case, plaintiff fails to establish that defendants' decision to terminate him was in any way prompted by the content of plaintiff's various projects. The mid-term reviews questioned only the quantity, not the quality, of plaintiff's research. Similarly, criticisms of the Clerkship program report arose more from plaintiff's inability to meet deadlines imposed by his superiors than from any opinion expressed in the text. In short, plaintiff fails to satisfy either test presented in *Connick* and *Mt. Healthy* which would entitle him to First Amendment protection.

■ Finally, plaintiff's vague "academic freedom" arguments fall short of stating a cause of action. Plaintiff apparently believes that the mere fact that his scholarly life was suspended by his dismissal entitles him to constitutional protection. Yet the cases cited by plaintiff to support this contention are wholly inapplicable to the present case. *See e.g., Regents of the University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (special admissions program designed to facilitate enrollment of minority students at state medical school held to violate equal protection clause of the Fourteenth Amendment); *Keyishian v. Bd. of Regents,* 385

U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) (professors reinstated following termination for refusal to comply with state anti-subversive statutes); *Barenblatt v. United States*, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959) (court upheld incarceration of professor for refusal to answer questions before congressional subcommittee concerning communist activity); *Sweezy v. New Hampshire*, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957) (state's inquiry into content of academic's lectures and political associations violated First Amendment right to free speech); *Holley v. Seminole County School District*, 755 F.2d 1492 (11th Cir.1985) (teacher discharged for engaging in constitutionally protected activity entitled to de novo hearing in federal court).

### C. *Pendent State Claims*

As plaintiff's federal claims fail to state a cause of action, the Court will dismiss plaintiff's state law claims for lack of pendent jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### III. CONCLUSION

Defendants' motion to dismiss all eight counts of plaintiff's complaint is granted.

IT IS SO ORDERED.