**Kathleen MOORE and James Serio, Plaintiffs,**

v.

**LeRoy MARTIN, Superintendent of Police, Chicago Police Department, The Police Board of the City of Chicago and City of Chicago, A Municipal Corporation, Defendants.**

**No. 89 C 7473.**

United States District Court, N.D. Illinois, E.D.

May 22, 1991.

---

Joseph V. Roddy, Thomas J. Pleines, Arthur Neville, Law Offices of Joseph V. Roddy, Chicago, Ill., for plaintiffs.

Kelly R. Welsh, Robert T. Karmgard, Barbara Smith, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Defendants LeRoy Martin and the City of Chicago have moved for summary judgment on all claims in the amended verified complaint of plaintiffs Kathleen Moore and James Serio. For the reasons stated below, defendants' motion must be granted in part and denied in part.

## I. BACKGROUND FACTS

The parties do not dispute the following facts. Plaintiffs Kathleen Moore and James Serio were City of Chicago police officers assigned to beat patrol in the City's 9th District. For a brief period of time, both officers were suspended as police officers.

Both plaintiffs were suspended for allegedly taking two black youths into their custody on August 14, 1989 and verbally and physically abusing them. The plaintiffs then allegedly released the youths at 35th and Union Streets in Chicago, where the youths were then physically abused by a gang of white youths.

During the evening of August 16, 1989, plaintiffs were each brought into an office in the 9th District station where they were presented with Notifications of Charges/Allegations. Plaintiffs understood the Notifications, had no questions, and signed the notifications.

Plaintiffs were also presented with "Waiver of Counsel/Request to Secure Counsel" forms. Plaintiffs marked the forms stating that they requested to secure counsel. Plaintiffs also wrote on the forms that because they chose to seek counsel, they agreed to proceed with "hearing, examination or interrogation" at a time and

date "to be notified." Plaintiffs then signed the forms.

Plaintiffs were not, however, called in for interrogations prior to their suspensions. Instead, on September 25, 1989, defendant Superintendent of Police LeRoy Martin ordered both officers to be suspended for thirty days pending the filing of formal charges with the Chicago Police Board. The suspensions were effective September 26, 1989.

On October 3, 1989 plaintiffs filed their original verified complaint for injunction, declaratory judgment and other relief. Prior to hearing plaintiff's companion emergency motion for temporary restraining order, however, the parties reached an agreement—an agreement set forth in an Agreed Order entered by Judge Hart on October 4, 1989.

Under the terms of the Agreed Order, defendants agreed to reinstate plaintiffs with full back pay and benefits retroactive to September 26, 1989—the date of plaintiffs' suspensions. In the same order, plaintiffs agreed to "appear no later than October 10, 1989, with counsel, at the offices of the Chicago Police Department for the purpose of responding to those allegations referred to within their instant Complaint and Motion." (Agreed Order, ¶ 3.)

On October 4, 1989, Superintendent Martin rescinded plaintiffs' suspensions. Plaintiffs were reimbursed for the portion of their salaries that had been withheld pursuant to their suspension orders—a period lasting from September 26 to October 4, 1989. Between August 16, 1989 and September 25, 1989 and again upon their return to duty on October 5, 1989 through October 15, 1989, plaintiffs were given desk assignments.

On October 10, 1989 plaintiffs appeared with their attorney at the offices of the Chicago Police Department for their interrogations. At that time plaintiffs again were provided with Notifications of Charges/Allegations. Both officers understood the Notifications, had no questions, and signed the Notifications. Plaintiffs then were advised of their constitutional rights to remain silent. Plaintiffs under-

stood those rights, had no questions, and acknowledged those rights with their signatures. Both plaintiffs then gave a statement asserting their rights to remain silent while a criminal investigation into their conduct was in progress.

On October 13, 1989 Superintendent Martin again suspended plaintiffs for thirty days pending the filing of charges against them with the Chicago Police Board. Plaintiffs' charges currently are pending before the Police Board, where plaintiffs are scheduled to receive a full evidentiary hearing on the allegations against them. Plaintiffs currently are working part time for a security firm.

On March 29, 1990 plaintiffs filed a three-count amended verified complaint for injunction, declaratory judgment and other relief. In their amended complaint plaintiffs challenge only their initial, September 26, 1989 suspensions.

Plaintiffs base their amended complaint on 42 U.S.C. Section 1983. Count I alleges that Superintendent Martin's September 26, 1989 suspension of plaintiffs deprived them of property without due process of law. In Count II plaintiffs aver that by placing "adverse employment information" in plaintiffs' employment files, defendants have deprived plaintiffs of liberty without due process. (Amended Verified Complaint, ¶ 28.) And Count III alleges that defendants deprived plaintiffs of property interests by not assigning them to "less sensitive" jobs in lieu of suspension.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In ruling on a motion for summary judgment the evidence of plaintiffs, the nonmovants here, must be believed, and all justifiable inferences must be drawn in their favor. *Anderson v. Lib-*

*erty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Defendants urge several bases for awarding summary judgment in their favor. The court addresses these bases in turn.

### A. *Mootness and Standing*

Defendants argue that plaintiffs' claims are moot and that plaintiffs lack standing to challenge the constitutionality of Police Board Rule IV(C). In their amended complaint, plaintiffs pray for the following relief:

(1) a declaratory judgment striking Police Board Rule IV(C) as unconstitutional;

(2) a permanent injunction restoring plaintiffs to full duty status or sheltered duty status as Chicago police officers will full back pay;

(3) a permanent injunction barring defendants from further suspending plaintiffs without a pre-deprivation hearing.[1]

■ Citing *Ragsdale v. Turnock,* 841 F.2d 1358, 1365 (7th Cir.1988), defendants assert that plaintiffs' challenge to the constitutionality of Police Board Rule IV(C), discussed below, is moot because "there is no reasonable expectation that the putatively illegal conduct will be repeated, and there are no remaining effects of the al-

leged violation." However, as this court noted in an earlier opinion, it is defendants' heavy burden of persuading the court that a controversy is moot. *Moore v. Martin,* No. 89 C 7473, slip op. at 4, 1990 WL 37767 (N.D.Ill. Mar. 15, 1990), *quoting Ragsdale,* 841 F.2d at 1365. Although the question is a close one, defendants have failed to carry their burden.

Plaintiffs argue that their claims are not moot and that they have standing to sue because their claims fall within the "capable of repetition but evading review" exception to the mootness and standing doctrines. *Air Line Pilots Ass'n, Int'l. v. UAL Corp.,* 897 F.2d 1394, 1399 (7th Cir. 1990), *citing Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975); *see also Feit v. Ward,* 886 F.2d 848, 856–857 (7th Cir.1989). The "capable of repetition, yet evading review" doctrine is limited to the situation where two elements combine:

(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration; and

(2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.

The court finds both elements present here.

It is clear that plaintiffs' "emergency suspensions" under Police Board Rule IV(C) were too short in duration to be fully litigated. The suspensions were rescinded within nine days pursuant to the parties' settlement. Moreover, in any event the suspensions could not exceed thirty days. *See* Rules and Regulations of the Police Department, City of Chicago, IV(D), at 37, attached as Exhibit A to P1. Response.

But is there a reasonable expectation that the plaintiffs again will be subjected to the same emergency suspensions? Neither plaintiffs nor defendants specifically address this point.

Nonetheless, according to the facts before this court, plaintiffs currently remain suspended—suspensions based upon Super-

---

1. This court previously dismissed plaintiffs' claim for punitive damages. *See Moore v. Martin,* No. 89 C 7473, slip op. at 5, 1990 WL 71029

(N.D.Ill. May 7, 1990). Although plaintiffs also seek attorney's fees and court costs, they have offered no basis for either claim.

intendent Martin's October 13, 1989 suspension order which plaintiffs do not challenge in their amended complaint. According to the available evidence, plaintiffs' charges currently are pending before the Police Board, where plaintiffs are scheduled to receive a full evidentiary hearing on the allegations against them. Plaintiffs' suspensions may well be reversed. If that happens, they may be subjected to the same allegedly unconstitutional "emergency suspensions" which they suffered on September 25, 1989.

Against this background, it is not "absolutely clear," absent a declaratory judgment relating to Police Board Rule IV(C), "that the allegedly wrongful behavior could not reasonably be expected to recur." *Vitek v. Jones*, 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980). Accordingly, defendants' argument that plaintiffs' claim for declaratory relief is moot and that plaintiffs lack standing to seek declaratory relief must be rejected.[2]

■ Defendants are correct, however, that the remaining relief sought by plaintiffs is moot. In their second prayer for relief, plaintiffs seek a permanent injunction restoring them to full duty status or sheltered duty status as Chicago police officers with full back pay. However, plaintiffs admit that they were restored to full duty status and that they have been fully reimbursed for the pay they lost because of their September 25, 1989 suspensions. (12(n) Statement, ¶¶ 12–14.)

In their final request for relief, plaintiffs pray for a permanent injunction barring defendants from further suspending them without a pre-deprivation hearing. Again, however, it is undisputed that plaintiffs have already been given a constitutionally sufficient opportunity to be heard.

On October 10, 1989 plaintiffs appeared with their attorney at the Chicago Police

Department offices for their interrogations. Plaintiffs were provided with Notifications of Charges/Allegations and apprised of their constitutional rights to remain silent. Plaintiffs chose to exercise those rights and remained silent.

The fact that plaintiffs had to choose whether to talk or to remain silent during their interrogations offends neither the fifth nor the fourteenth amendment. *Gniotek v. Philadelphia*, 808 F.2d 241, 245 (3rd Cir.1986). Accordingly, plaintiffs' plea for an injunction barring defendants from suspending them without a pre-deprivation hearing is moot.[3]

**B.** *Count I*

■ Therefore, as to Count I, this court need only determine whether Police Board Rule IV(C) is unconstitutional as violative of the due process clause. Rule IV(C) states:

C. Emergency Procedures

1. The member [of the police department] shall be served with a notice of suspension including an express finding by the Superintendent of Police that the public safety, or the good of the Department or both require the immediate suspension of the member.

2. No later than seven days after service of the notice of emergency suspension a member of the Police Board or its hearing officer shall review the order of the Superintendent together with the reasons therefor and shall at that time preliminarily affirm or reverse such order. If the order is reversed, the member shall be reinstated and paid for any period under suspension as a result of the order. If the order is preliminarily affirmed, the Police Board shall within 30 days of such affirmance review such order and may

---

**2.** The possibility that plaintiffs will be subjected to the same injury in the future resolves both the mootness and the standing challenges. *Feit*, 886 F.2d at 857–58 and n. 12.

**3.** Although Superintendent Martin again suspended plaintiffs for thirty days on October 13, 1989 pending the filing of charges against them

with the Chicago Police Board, plaintiffs do not challenge the constitutional propriety of that second suspension. It is undisputed that plaintiffs' charges currently are pending before the Police Board, where plaintiffs are scheduled to receive a full evidentiary hearing on the allegations against them.

*in its discretion*, afford the member an opportunity to receive a hearing pursuant to the Rules of the Police Board.

3. If the Police Board, upon hearing, determines that the emergency suspension was unwarranted, the Police Board shall order the member reinstated and paid for any period under suspension as a result of the order.

(Rules and Regulations of the Police Department, City of Chicago, IV(C), at 36, attached as Exhibit A to P1. Response (emphasis added).)

As the Supreme Court has stated, "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.*, 470 U.S. at 546, 105 S.Ct. at 1495.

In this case, Rule IV(C) authorizes the Superintendent of Police to suspend a member of the Chicago police force with neither a pre- nor a post-suspension hearing.[4] The parties have not briefed and this court need not determine whether the failure to provide a pre-suspension hearing alone is constitutionally improper. Indeed, Rule IV(C) contemplates situations where "the public safety, or the good of the [Police] Department or both require the immediate suspension of a member." Rule IV(C)(1). In balancing the competing interests at stake, such "emergency" circumstances may obviate the need for a pre-termination hearing. *See Loudermill*, 470 U.S. at 542–43, 105 S.Ct. at 1493 (courts are to balance "the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination").

In this case, however, it is clear that Rule IV(C) requires *neither* a pre-suspension or a post-suspension hearing. Such a rule does not pass constitutional muster under *Loudermill*. *Id.*, 470 U.S. at 542, 105 S.Ct. at 1493.

Defendants argue that Rule IV(C) on its face shows that it only applies *after* a suspension, and thus has no application to the Chicago Police Department's pre-suspension investigatory procedures. (Def. Mem. in Support at 6.) This court, however, finds no reference whatsoever in Rule IV(C) suggesting that a member of the police department must be suspended *first*, before the Rule applies. On the contrary, the Rule is entitled "Emergency Procedures" and appears to contemplate the immediate suspension of a police officer based solely upon an express finding by the Superintendent of Police that the public safety or the good of the Police Department so require.[5]

Central to defendants' argument is that Chicago Police Department General Order 82–14 sets forth pre-deprivation, investigatory procedures that the department follows even under the emergency procedures established by Rule IV(C). However, nothing in the language of Rule IV(C) intimates that it is subject to General Order 82–14.

Moreover, General Order 82–14 contemplates a substantial time lag between the filing of a complaint against an officer and completion of an investigation into that complaint. *See, e.g.*, General Order 82–14, Addendum 3, II(10) (investigations generally to be completed within ten days). Considerable time also necessarily elapses as officers are given opportunities to be heard relating to the complaints filed against them. *See id.*, Addenda 3–4. Such a lengthy lapse of time prior to suspension

---

4. This assumes that the Police Board, "in its discretion," chooses not to afford the member an opportunity to receive a post-deprivation hearing. Rule IV(C)(2).

5. Indeed, plaintiffs' suspensions without pre-deprivation process support this reading of the Rule.

appears inconsistent with the "emergency" nature of Rule IV(C), which authorizes "immediate suspension" of members.

In summary, nothing in Rule IV(C) suggests that it is subject to the constraints of General Order 82–14. Instead, the language of Rule IV(C) suggests that it cannot accommodate the procedures set forth in General Order 82–14. Accordingly, the court finds that Rule IV(C)'s constitutional infirmity is not cured by General Order 82–14 as defendants suggest.

Because Rule IV(C) provides an opportunity to be heard neither before nor after a member's suspension, it violates the due process clause of the Constitution. Thus, defendants' request for summary judgment relating to plaintiffs' claim for a declaratory judgment must be denied. There being no material, disputed factual issues remaining relative to plaintiffs' declaratory judgment claim, the court enters judgment in plaintiffs' favor on their claim that Chicago Police Board Rule IV(C) is unconstitutional.

### C. Count II

■ Plaintiffs allege in Count II of their amended complaint that by placing "adverse employment information" in plaintiffs' employment files, defendants deprived them of liberty without due process of law. Specifically, they allege that such information deprived them "of their liberty interest to pursue their chosen professions and their liberty interest in their good name and reputation...." (Amended Verified Complaint, ¶ 26.)

The Supreme Court has constructed a four-part "stigma-plus" test which must be satisfied before a liberty interest in employment will be recognized:

(1) Plaintiffs must show that the reasons offered for defendants' decision to dismiss them are so severe as to impose a "stigma" on plaintiffs and thereby foreclose future employment opportunities. *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

(2) Plaintiffs must show that these reasons have been "publicized," or disseminated to the general public by defendants. *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976).

(3) Plaintiffs must have challenged the validity of defendants' assertions and alleged that they are false. *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). And,

(4) The stigma allegedly imposed upon plaintiffs must be accompanied by a concurrent loss of a state-created right or status. *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

*Weinstein v. University of Illinois*, 628 F.Supp. 862, 864–65 (N.D.Ill.1986), *aff'd* at 811 F.2d 1091 (7th Cir.1987). Plaintiffs in this case have failed to raise a genuine issue of material fact as to all of the elements of this test.

For example, plaintiffs have cited no evidence, apart from the allegations of their amended complaint, indicating that they have either challenged the validity of the "adverse employment information" referenced in their complaint or alleged that that information is false. As noted above, in response to defendants' motion for summary judgment, plaintiffs may not rest on their pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also Hannon v. Turnage*, 892 F.2d 653, 657 (7th Cir.1990) (plaintiff cannot rely upon "mere unsupported denials, and ... must come forward with contradictory evidence of his own to establish a genuine issue of material fact").

Similarly, plaintiffs have failed to raise a genuine issue of material fact that defendants disseminated to the general public stigmatizing reasons for plaintiffs' suspensions.[6] Moreover, plaintiffs have raised no genuine dispute that defendants' inter-

---

**6.** Although the press somehow acquired information relating to plaintiffs' suspensions, plaintiffs fail to raise a genuine issue of material fact suggesting that defendants were responsible for such dissemination.

agency circulation, for a specific purpose, of information relating to plaintiffs' suspensions abridges a liberty interest of plaintiffs. *Hannon*, 892 F.2d at 660.

Accordingly, defendants' motion for summary judgment on Count II of plaintiffs' amended complaint must be granted.

### D. *Count III*

■ Finally, in Count III plaintiffs allege that defendants deprived them of their property interest in receiving assignments to "less sensitive" jobs in lieu of suspensions. It is undisputed, however, that plaintiffs were assigned to desk jobs pending the filing of Police Board charges. (12(n) Statement, ¶ 14.) Consequently, plaintiffs' claims to a property interest in desk jobs is moot.

Even if it were not moot, however, plaintiffs have failed to raise a genuine dispute suggesting that they have a constitutionally protected interest in a specific assignment. *Cf. Confederation of Police v. Chicago*, 547 F.2d 375, 376 (7th Cir.1977) (Chicago patrol officer has no property interest in the conditions of employment). Defendants' motion for summary judgment on Count III of plaintiffs' amended complaint must be granted as well.

### III. CONCLUSION

For the reasons stated in this memorandum opinion and order: (1) the court DECLARES Chicago Police Board Rule IV(C) to be unconstitutional in that it violates the due process clause by authorizing the Police Superintendent to suspend police officers without either a pre-suspension or post-suspension opportunity to be heard; (2) in all other respects, defendants' motion for summary judgment on plaintiffs' amended verified complaint is GRANTED; and (3) this case is DISMISSED in its entirety.