**Nancy SEKOR,**

v.

**Mary CAPWELL, a/k/a Mary Gorman, and Ridgefield Board of Education.**

**Civ. No. 5–92–CV–327 (WWE).**

United States District Court, D. Connecticut.

April 19, 1995.

William M. Laviano, Laviano & LoCascio, P.A., Ridgefield, CT, for plaintiff.

Michael Peter McKeon, Robert J. Murphy, Sullivan, Lettick & Schoen, Hartford, CT, for defendants.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, a former public school teacher in Ridgefield, Connecticut, brought this action alleging wrongful suspension of employment in four counts pursuant to the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments to the United States Constitution, and pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. ("ADEA"). Defendants have moved for summary judgment on each count pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion will be granted as to Counts One, Two and Three, and denied as to Count Four.

### FACTS

The pleadings, testimony elicited during extensive hearings on a preliminary injunction motion, affidavits and other supporting material contained in the motion papers reveal the following undisputed facts. Plaintiff was employed as a tenured teacher at the East Ridge Junior High School in Ridgefield, Connecticut from 1969 until 1971. She taught business and business education classes. She resigned in 1971 and resumed teaching in 1980. From 1980 until 1989 she taught the same types of courses at Ridgefield High School, for which she received favorable reviews. By 1983 she had attained tenure. She took a leave of absence during the 1989–90 school year.

During the 1990–91 school year, plaintiff taught business classes at the middle and high schools and at least one social studies class at the middle school. On November 7, 1990, plaintiff was placed in a "corrective action plan" after the House Administrator, Dr. Adeline Merrill, observed plaintiff teaching an eighth grade social studies class and found what were, in her opinion, deficiencies in plaintiff's teaching. The "corrective action plan" involved regular meetings with the chair of the social studies department as well as regular observations of plaintiff's classroom performance.

On January 4, 1991, plaintiff was placed in an "intensive assistance" program. Dr. Merrill warned plaintiff that her employment would be terminated if her teaching did not improve. In June, 1991, an evaluation noted some improvement in plaintiff's performance. On September 16, 1991, Mary Capwell, plaintiff's supervisor, sent plaintiff a memorandum informing her that her performance was unsatisfactory.

In the 1991–92 school year, plaintiff was assigned to teach two business classes and three English classes at the East Ridge Middle School. She continued in the "intensive assistance" program. On October 3, 1991, defendant Capwell observed plaintiff while teaching an intensive eighth grade English class in which students were composing stories and diary entries. Capwell later reprimanded plaintiff for permitting a student to use "damn" or "hell" in his diary entry.

On January 17, 1992, Marcia Street, a House Administrator directly under Ms. Capwell, conducted a performance review of plaintiff teaching an eighth grade English class. Street's Teacher Observation Report contained four comments, one of which criticized plaintiff for leading a class discussion on similarities between Jesus Christ and a literary character named Doodle. Doodle is a character in a short story, "The Scarlet Ibis" by James Hurst, which is found in an anthology of short stories. Street wrote that "[u]nder no circumstances should a teacher in a public school initiate discussion or dwell on religious themes, particularly from the New Testament." She also commented: "It is generally common knowledge among public school teachers that an historical context is the only acceptable one in which one may teach religious concepts in the classroom."

In January, 1992, Capwell informed plaintiff that her performance was well below established standards and that she planned to make a recommendation as to plaintiff's continued employment as a teacher. On or about January 21, 1992, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities based on alleged discrimination by the defendants on the basis of her age. She later withdrew the complaint. In February, 1992, plaintiff ceased teaching the English classes.

On March 23, 1992, the Ridgefield Board of Education ("Board") voted to consider the termination of plaintiff's employment contract due to incompetency. Public hearings before a panel were conducted from May 27, 1992 through January 18, 1993. On August 24, 1992, while the hearings were being conducted, the Board ratified the superintendent's decision to suspend plaintiff with pay and benefits pending a final decision in the termination proceedings. On August 26, 1992, plaintiff demanded arbitration of the

Board's decision before the American Arbitration Association.

In June, 1992, plaintiff instituted this action against the Board and Mary Capwell, principal of the East Ridge Middle School during the 1990–91 and 1991–92 school years. After conducting hearings with extensive testimony, this Court denied plaintiff's motions for a preliminary injunction and partial summary judgment in an order dated July 12, 1993.

On May 26, 1993, the local hearing panel issued a report finding plaintiff incompetent to teach English and social studies, but not business classes, and recommended that her teaching contract be terminated. On October 6, 1993, the Board voted to terminate plaintiff's employment contract. Plaintiff appealed the Board's decision pursuant to Connecticut General Statutes § 10–151(f). That appeal is pending.

### DISCUSSION

■ A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

### Due Process claims

Count Two of plaintiff's first amended complaint broadly alleges that her suspension was a violation of her due process liberty interests because defendants' false allegations were "published" in plaintiff's personnel file and during public hearings. She further alleges that she was denied her due process

38

property rights because she was not given a pre-suspension hearing. Defendants move for summary judgment as a matter of law on the grounds that plaintiff was not entitled to a hearing before suspension and that plaintiff has received adequate due process through termination proceedings.

Plaintiff did not address either issue in her opposition brief or affidavit and apparently agrees with defendants that, since she was not entitled to a suspension hearing, she was not deprived of her property or liberty interests. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *Tucker v. Bd. of Educ.,* 4 Conn.App. 87, 92, 492 A.2d 839 (Conn.App.Ct.1985). Thus, plaintiff has effectively conceded that there is no genuine issue of material fact in connection with her due process claims and that defendants are entitled to judgment. Fed.R.Civ.P. 56(d).

### First Amendment claims

Counts One and Three of plaintiff's first amended complaint allege that defendants' ratification of Ms. Street's report and defendant Capwell's criticism of plaintiff for permitting a student to use "damn" or "hell" violated her First Amendment rights to academic freedom and freedom of speech. She claims that the statements in the evaluation and the reprimand were pursuant to "religion" and "profanity" rules recognized by the Board. Defendants deny the existence of such rules. For the following reasons, the court finds that defendant Capwell is not liable, by virtue of lacking final policy-making authority, and that plaintiff has failed to establish a genuine issue of material fact concerning the existence of either a "religion" or "profanity" policy.

■ A municipality may be deemed liable pursuant to 42 U.S.C. § 1983 for a violation of Constitutional rights if the municipality causes the violation. It may not be held responsible under a theory of *respondeat superior* or vicarious responsibility for every action of its employees. For a municipality to be found liable, the act must have been pursuant to the municipality's policy or custom. *Monell v. Dep't. of Social Servs.,* 436 U.S. 658, 691–694, 98 S.Ct. 2018, 2036–2037, 56 L.Ed.2d 611 (1978).

■ The act must also have been performed by a body or official with "final policy-making authority." *Jett v. Dallas Indep. School Dist.,* 491 U.S. 701, 736–37, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989) *citing City of St. Louis v. Praprotnik,* 485 U.S. 112, 123–124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Random acts or isolated incidents by employees are generally not sufficient to establish custom or official policy unless approval can be inferred through supervisory failure to act that amounts to deliberate indifference or "gross negligence." *Turpin v. Mailet,* 619 F.2d 196, 200–202 (2d Cir.1980), *cert. denied, sub nom. Turpin v. City of West Haven,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

■ Whether the official who allegedly caused the deprivation of rights possessed "final policy-making authority" is a question of law that must be resolved according to state law. The court must look to state and local positive law as well as "'custom or usage' having the force of law." Once the court has identified those bodies or officials who have final policy-making authority with regard to the action, it becomes a question of fact as to whether those bodies or officials caused the violation either by affirmative policies or by "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett,* 491 U.S. at 737, 109 S.Ct. at 2724 *quoting Pembaur v. Cincinnati,* 475 U.S. 469, 485–87, 106 S.Ct. 1292, 1301–02, 89 L.Ed.2d 452 (1986).

In her reply papers plaintiff does not contest that defendant Capwell did not have final policy-making authority under Connecticut law with respect to either alleged violation of plaintiff's First Amendment rights. Accordingly, as Capwell was not a final policy maker, there is no issue of material fact as to whether either of her actions was pursuant to a governmental custom or policy.

■ Defendant Board denies the existence of an official religion or profanity rule as alleged by plaintiff. Plaintiff acknowledges that the Board does not have a written policy to restrict unconstitutionally the academic freedom or the freedom of speech of teachers in its employ. She alleges that she was

reprimanded pursuant to unwritten "religion" and "profanity" rules that constitute policies of the Board.

However, plaintiff has not presented any evidence indicating the existence of such policies. In its previous order dated June 12, 1993, this Court found that plaintiff had "failed to demonstrate that Ms. Street's statement on the teacher evaluation form was a policy adopted by the Board and not merely an admittedly overly broad comment...." Plaintiff has presented virtually no additional evidence in response to the present motion. Accordingly, there is no genuine issue of material fact as to whether such rules exist and judgment on Counts One and Three will be entered for defendants.

### Age Discrimination in Employment Act claim

Count four of plaintiff's first amended complaint alleges that defendants discriminated against plaintiff on the basis of her age and retaliated against her for filing an age discrimination claim in violation of the ADEA, 29 U.S.C. §§ 621–634.

Pursuant to the ADEA, it is unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). It is also unlawful to discriminate against an employee because that individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under the ADEA. 29 U.S.C. § 623(d).

■ In a Title VII suit, the initial burden is on the plaintiff to make a *prima facie* case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Upon such a showing the plaintiff must show by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973). To establish that a reason was a pretext, the plaintiff must show that it was false and that discrimination was the real reason. *St.*

*Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). This test applies to cases brought pursuant to the ADEA. *Lowe v. Commack Union Free School District*, 886 F.2d 1364 (2d Cir.1989).

■ A plaintiff typically establishes a *prima facie* case by showing she is a member of the protected class, *i.e.* an individual at least 40 years of age, 29 U.S.C. § 631(a), that she was qualified for her position, that she suffered an adverse employment action and that the action was taken under circumstances giving rise to an inference of age discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94 (1981).

■ In the present motion, defendants do not contest that plaintiff has established a *prima facie* case. They contend that they have met their burden to articulate legitimate, nondiscriminatory reasons but that plaintiff has failed to show that defendants' explanation is "unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Defendants have articulated legitimate, non-discriminatory reasons for recommending the termination of plaintiff's employment. In her affidavit, defendant Capwell states that she made the recommendation to terminate plaintiff based upon her belief that plaintiff was incompetent. She states that although plaintiff was placed on corrective action and intensive assistance plans due to deficiencies in her teaching, she failed to improve. Furthermore, Jeffrey N. Hanson, the Chief Executive Officer of the Board, states in his affidavit that the hearing panel reported to the Board that plaintiff was incompetent in the areas of social studies and English. On its face, an employee's work performance is a legitimate reason for recommending termination.

■ However, there remains a genuine issue of material fact as to whether defendants' reason was a pretext for unlawful age discrimination. A defendant's summary judgment motion should not be granted if the plaintiff shows that there is a material issue of fact as to whether (1) the employer's asserted reason for the action is false or un-

worthy of belief and (2) more likely than not the employee's age was the real reason for the action. *Woroski v. Nashua Corp.*, 31 F.3d 105, 108–9 (2d Cir.1994). Plaintiff has met this burden.

Plaintiff contends that defendants' discrimination and retaliation against her took the forms of failure to complete her intensive assistance program, failure to assign her to a business education vacancy, and numerous negative remarks and derogatory comments based upon her age. She also alleges that statistical evidence indicates the Board had a policy to "root out" older teachers.

In her affidavit, plaintiff alleges that at the time the Board voted to terminate her contract on October 6, 1993, a business education position was open at the high school due to the retirement of a teacher. She states that it was for the position she had taught before being transferred to the middle school and for which the panel found her competent. She states that Mr. Paul Hazel, the Director of Personnel and General Administration of the Ridgefield School System, stated in front of her that he only interviewed teachers outside of the protected age classification for the position and that a less-qualified teacher, approximately age 30, was appointed.

Plaintiff also claims that defendant Capwell and Dr. Merrill made numerous statements relating to plaintiff's age. She states that they both told her that her methods were "old fashioned" and that the "old fashioned traditional approach to teaching was not effective." She alleges that she was harassed in December, 1991, when an administrator observed every English class she taught, although no other teacher was subjected to such treatment. Plaintiff also alleges that defendant Capwell asked parents of students to write letters stating their complaints about plaintiff.

Plaintiff further alleges that Dr. Merrill did not complete her intensive assistance plan as required. She specifically alleges that Dr. Merrill failed to perform any observations of plaintiff's teaching from February 27, 1991 to September 27, 1992.

Lastly, plaintiff contends that her treatment was part of a pattern to "root out" older teachers in Ridgefield by threatening to place them on intensive action programs if they refused to retire early. She states that the former superintendent made such an offer to her before the inception of the dismissal proceedings.

Plaintiff also claims that statistical evidence shows a pattern or practice of discrimination against older teachers. *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984). In answer to defendants' interrogatories, plaintiff stated that during the 1990–92 school years, six teachers were on corrective action or intensive assistance at the East Ridge Middle School and that five of these were over the age of 40.

In response, defendants allege that in 1990, five teachers including plaintiff were on the plans and that two were age 40 or younger. They state that out of 72 teaching staff members, 58 were age 40 or older. Defendants also state that since 1990, 50 of the 79 new hires have been under the age of forty and that during the 1991–92 school year, 68% of the teachers in Ridgefield were on the maximum salary step. The list submitted by defendants indicates that in 1994, 31 of the 79 teachers listed were age 40 or older and only one was over the age of fifty. The list includes several teachers who were hired before 1990.

Plaintiff has made more than conclusory allegations. She has shown some evidence that she was encouraged to leave because of her age. She stated that her superiors made discriminatory comments to her on specific occasions, and that the corrective action and intensive assistance programs were used to harass her. She also stated that she was not offered a position for which she was qualified that became available before she was terminated and that this position was given to a younger, less experienced teacher.

Accordingly, it must be concluded that plaintiff has met her burden to show a genuine issue of material fact as to whether defendants' reasons for recommending plaintiff's termination are false and as to whether the real reason was because of her age.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment [65] as to Counts One, Two and Three are GRANTED and as to Count Four is DENIED.