## CODD, POLICE COMMISSIONER, CITY OF NEW YORK, ET AL. v. VELGER

No. 75–812.   Argued December 1, 1976—Decided February 22, 1977

*W. Bernard Richland* argued the cause and filed a brief for petitioners.

*Sam Resnicoff* argued the cause for respondent.   With him on the brief was *Edward M. Rappaport.*

Per Curiam.

Respondent Velger's action shifted its focus, in a way not uncommon to lawsuits, from the time of the filing of his complaint in the United States District Court for the Southern District of New York to the decision by the Court of Appeals for the Second Circuit which we review here. His original complaint alleged that he had been wrongly dismissed without a hearing or a statement of reasons from his position as a patrolman with the New York City Police Department, and under 42 U. S. C. § 1983, sought reinstatement and damages for the resulting injury to his reputation and future employment prospects.   After proceedings in

which Judge Gurfein (then of the District Court) ruled that respondent had held a probationary position and therefore had no hearing right based on a property interest in his job, respondent filed an amended complaint. That complaint alleged more specifically than had the previous one that respondent was entitled to a hearing due to the stigmatizing effect of certain material placed by the City Police Department in his personnel file. He alleged that the derogatory material had brought about his subsequent dismissal from a position with the Penn-Central Railroad Police Department, and that it had also prevented him from finding other employment of a similar nature for which his scores on numerous examinations otherwise qualified him.[1]

The case came on for a bench trial before Judge Werker, who, in the words of his opinion on the merits, found "against plaintiff on all issues." He determined that the only issue which survived Judge Gurfein's ruling on the earlier motions was whether petitioners, in discharging respondent had "imposed a stigma on Mr. Velger that foreclosed his freedom to take advantage of other employment opportunities." After discussing the evidence bearing upon this issue, Judge Werker concluded that "[i]t is clear from the foregoing facts that plaintiff has not proved that he has been stigmatized by defendants."

Among the specific findings of fact made by the District Court was that an officer of the Penn-Central Railroad

---

[1] Respondent's amended complaint did not seek a delayed *Roth* hearing to be conducted by his former employer at which he would have the opportunity to refute the charge in question. *Board of Regents* v. *Roth*, 408 U. S. 564, 573 (1972). The relief he sought was premised on the assumption that the failure to accord such a hearing when it should have been accorded entitled him to obtain reinstatement and damages resulting from the denial of such hearing. We therefore have no occasion to consider the allocation of the burden of pleading and proof of the necessary issues as between the federal forum and the administrative hearing where such relief is sought.

Police Department was shown the City Police Department file relating to respondent's employment, upon presentation of a form signed by respondent authorizing the release of personnel information. From an examination of the file, this officer "gleaned that plaintiff had been dismissed because while still a trainee he had put a revolver to his head in an apparent suicide attempt." The Penn-Central officer tried to verify this story, but the Police Department refused to cooperate with him, advising him to proceed by letter. In rendering judgment against the respondent, the court also found that he had failed to establish "that information about his Police Department service was publicized or circulated by defendants in any way that might reach his prospective employers."

Respondent successfully appealed this decision to the Court of Appeals for the Second Circuit. That court held that the finding of no stigma was clearly erroneous. It reasoned that the information about the apparent suicide attempt was of a kind which would necessarily impair employment prospects for one seeking work as a police officer. It also decided that the mere act of making available personnel files with the employee's consent was enough to place responsibility for the stigma on the employer, since former employees had no practical alternative but to consent to the release of such information if they wished to be seriously considered for other employment. *Velger* v. *Cawley,* 525 F. 2d 334 (1975).

We granted certiorari, *sub nom. Cawley* v. *Velger,* 427 U. S. 904 (1976), and the parties have urged us to consider whether the report in question was of a stigmatizing nature, and whether the circumstances of its apparent dissemination were such as to fall within the language of *Board of Regents* v. *Roth,* 408 U. S. 564, 573 (1972) and *Bishop* v. *Wood,* 426 U. S. 341 (1976). We find it unnecessary to reach these issues, however, because of respondent's failure to allege or prove one essential element of his case.

Assuming all of the other elements necessary to make out a claim of stigmatization under *Roth* and *Bishop,* the remedy mandated by the Due Process Clause of the Fourteenth Amendment is "an opportunity to refute the charge." 408 U. S., at 573. "The purpose of such notice and hearing is to provide the person an opportunity to clear his name," *id.,* at 573 n. 12. But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation. Nowhere in his pleadings or elsewhere has respondent affirmatively asserted that the report of the apparent suicide attempt was substantially false. Neither the District Court nor the Court of Appeals made any such finding. When we consider the nature of the interest sought to be protected, we believe the absence of any such allegation or finding is fatal to respondent's claim under the Due Process Clause that he should have been given a hearing.

Where the liberty interest involved is that of conditional freedom following parole, we have said that the hearing required by the Due Process Clause in order to revoke parole must address two separate considerations. The first is whether the parolee in fact committed the violation with which he is charged, and the second is whether if he did commit the act his parole should, under all the circumstances, therefore be revoked. *Morrissey* v. *Brewer,* 408 U. S. 471, 479–480 (1972); *Gagnon* v. *Scarpelli,* 411 U. S. 778, 784 (1973). The fact that there was no dispute with respect to the commission of the act would not necessarily obviate the need for a hearing on the issue of whether the commission of the act warranted the revocation of parole.

But the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely "to provide the person an opportunity to clear his name." If he does not challenge the substantial truth

of the material in question, no hearing would afford a promise of achieving that result for him. For the contemplated hearing does not embrace any determination analogous to the "second step" of the parole revocation proceeding, which would in effect be a determination of whether or not, conceding that the report were true, the employee was properly refused re-employment. Since the District Court found that respondent had no Fourteenth Amendment property interest in continued employment,[2] the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question. Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required. *Roth, supra; Bishop, supra.*

Our decision here rests upon no overly technical application of the rules of pleading. Even conceding that the respondent's termination occurred solely because of the report of an apparent suicide attempt, a proposition which is certainly not crystal clear on this record, respondent has at no stage of this litigation affirmatively stated that the "attempt" did not take place as reported. The furthest he has gone is a suggestion by his counsel that "[i]t might have been all a mistake, [i]t could also have been a little horseplay." This is not enough to raise an issue about the substantial accuracy of the report. Respondent has therefore made out no claim under the Fourteenth Amendment that he was harmed by the denial of a hearing, even were we to accept in its entirety

[2] The Court of Appeals did not pass on this "property interest" question. Respondent has not urged it as an alternative basis for affirming the judgment of that court, and indeed has all but conceded in his brief that the District Court's interpretation of the relevant New York cases is correct in this respect. Brief for Respondent 14. The opinion of the District Court on this point reflects a proper understanding of *Roth, supra,* and of *Perry* v. *Sindermann,* 408 U. S. 593 (1972), and we see no reason to disturb its application of those cases to particular facets of the New York law of entitlement to public job tenure. *Id.,* at 602 n. 7.

the determination by the Court of Appeals that the creation and disclosure of the file report otherwise amounted to stigmatization within the meaning of *Board of Regents* v. *Roth, supra.*

The judgment of the Court of Appeals is reversed with instructions to reinstate the judgment of the District Court.

*So ordered.*

MR. JUSTICE BLACKMUN, concurring.

I join the Court's *per curiam* opinion, but I emphasize that in this case there is no suggestion that the information in the file, if true, was not information of a kind that appropriately might be disclosed to prospective employers. We therefore are not presented with a question as to the limits, if any, on the disclosure of prejudicial, but irrelevant, accurate information.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

I dissent from today's holding substantially for the reasons expressed by my Brother STEVENS in Part I of his dissent, despite my belief that the Court's ruling is likely to be of little practical importance.

Respondent alleged that he suffered deprivation of his liberty when petitioners terminated his employment and retained stigmatizing information in his employment file, information later disseminated to a prospective employer. Under *Board of Regents* v. *Roth,* 408 U. S. 564, 573 (1972), respondent therefore was entitled to a timely pretermination hearing. The Court today reaffirms *Roth,* but holds that respondent's retrospective claim for damages and equitable relief under 42 U. S. C. § 1983 must be denied because "at no stage of this litigation," [1] *ante,* at 628, has he "raise[d] an issue

---

[1] The Court fortunately makes clear that it is not calling for an

about the substantial accuracy of the report" in question.[2] *Ibid.* That holding, I believe, erroneously allocates the burden of introducing truth or falsity into the lawsuit.

Twice before this Term we have reasserted the principle that once a plaintiff establishes that another has interfered with his constitutional rights, the burden shifts to the wrongdoer to demonstrate that any such interference was strictly harmless. *Arlington Heights* v. *Metropolitan Housing Dev. Corp., ante,* at 270–271, n. 21; *Mt. Healthy City Board of Ed.* v. *Doyle, ante,* at 287. In this case respondent met his initial burden, for he adequately alleged that he has suffered injury to his reputation and job prospects in conjunction with a discharge from public employment, and that petitioners failed to comply with *Roth*'s resulting requirement of a due process hearing. I agree that the District Court remains open to a determination that petitioners' denial of respondent's due process rights produced little [3] or no compensable injury, since, even had the

---

"overly technical application of the rules of pleading." *Ante,* at 628. Indeed, there may be instances where a plaintiff reasonably cannot be held responsible for failing to *plead* falsity in his complaint. For example, in this instance, respondent cannot be faulted for his failure to plead falsity, since his complaint alleged that he "does not know the contents of his personnel file and has never seen or been advised of any derogatory matter placed in his file." App. 51a. Thus, his undoing occurred, according to the Court, in the later "stage[s] of this litigation," when he learned of the specific contents of the employment file but made little effort "to raise an issue about the substantial accuracy of the report." *Ante,* at 628.

[2] Respondent has never argued that the disseminated information, while truthful, was not properly informative of his role as policeman or employee. As MR. JUSTICE BLACKMUN notes, *ante,* at 629, the Court's opinion, therefore, does not address—and does not foreclose—the question of whether the Constitution imposes separate constraints upon the collection and dissemination of stigmatizing information that bears only an attenuated relationship to one's job performance or qualifications.

[3] A determination of truthful material would preclude an award of damages for false stigmatization of plaintiff's reputation. Nonetheless, because of petitioners' failure to satisfy *Roth*'s requirement of a pretermi-

hearing properly been held, the stigmatizing charges would have remained unrefuted. But any such allegation and proof of truthful material properly is a defense to be raised by the defendant wrongdoer—subject, of course, to appropriate disposition of the case by way of summary judgment should the employee thereupon fail to contest the "substantial accuracy of the report." Since petitioners interposed no such defense in this case, respondent's due process claim should be upheld.

I also agree with Part III of MR. JUSTICE STEVENS' dissenting opinion, and I would therefore remand this case to the Court of Appeals for further proceedings.

MR. JUSTICE STEWART, dissenting.

Although sharing generally the views expressed in the Court's opinion, I agree with Part III of MR. JUSTICE STEVENS' dissenting opinion, and I would for that reason remand this case to the Court of Appeals for further proceedings.

MR. JUSTICE STEVENS, dissenting.

There are three aspects of the Court's disposition of this case with which I disagree. First, I am not persuaded that a person who claims to have been "stigmatized" by the State without being afforded due process need allege that the charge against him was false in order to state a cause of action under 42 U. S. C. § 1983. Second, in my opinion the Court should not assume that this respondent was stigmatized, because the District Court's contrary finding was not

nation due process hearing, respondent still would have suffered deprivation of an established constitutional right. As with any infringement of an intangible constitutional right, e. g., Nixon v. Herndon, 273 U. S. 536, 540 (1927) (damages allowable for unlawful denial of the right to vote), a jury should be permitted to decide whether to fix and award damages— perhaps only nominal—for the very denial of a timely due process forum where a stigmatized individual could participate in the process of attempting to clear his name.

clearly erroneous. Third, I would remand the case to the Court of Appeals to consider the claim that respondent had a property interest in his job, since that court did not decide this issue.

## I

The Court holds that respondent's failure to allege falsity negates his right to damages for the State's failure to give him a hearing. This holding does not appear to rest on the view that a discharged employee has no right to a hearing unless the charge against him is false.[1] If it did, it would represent a radical departure from a principle basic to our legal system—the principle that the guilty as well as the innocent are entitled to a fair trial.[2] It would also be a departure from *Board of Regents* v. *Roth,* 408 U. S. 564, 572–575. In that case the Court concluded that a person is deprived of liberty when the State's refusal to rehire him destroys his "good name" in the community or forecloses him from practicing his

---

[1] The Court indicates, *ante,* at 625 n. 1, that its holding is premised on the form of relief sought. If falsity were a precondition to the existence of a constitutional violation, the form of relief would be irrelevant. For to grant any relief, the federal court would first have to determine that a violation had occurred, which would in turn require a finding of falsity. I recognize that there is authority for the view that falsity is an element of the violation. See *Sims* v. *Fox,* 505 F. 2d 857, 863–864 (CA5 1974) (en banc), cert. denied, 421 U. S. 1011. Cf. *Paul* v. *Davis,* 424 U. S. 693, 709–710 (describing *Board of Regents* v. *Roth,* 408 U. S. 564, as involving government "defamation").

[2] "When we deny even the most degraded person the rudiments of a fair trial, we endanger the liberties of everyone. We set a pattern of conduct that is dangerously expansive and is adaptable to the needs of any majority bent on suppressing opposition or dissension.

"It is not without significance that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law." *Anti-Fascist Committee* v. *McGrath,* 341 U. S. 123, 179 (Douglas, J., concurring).

profession. A hearing may establish that such a deprivation of liberty is warranted because the charges are correct. But *Bishop* v. *Wood,* 426 U. S. 341, 349, makes it clear that the truth or falsity of the charge "neither enhances nor diminishes [the employee's] claim that his constitutionally protected interest in liberty has been impaired." If the charge, whether true or false, involves a deprivation of liberty, due process must accompany the deprivation. And normally, as *Roth* plainly states, the Constitution mandates "a full prior hearing." 408 U. S., at 574.[3]

This hearing must include consideration of whether the charge, if true, warrants discharge. The discharge itself is part of the deprivation of liberty against which the employee is entitled to defend. Release of unfavorable information can damage an employee's reputation and employment prospects, but far greater injury is caused by an official determination, based on such information, that the employee is unfit for public employment. Indeed the Court has held that an injury to reputation had not resulted in a deprivation of liberty *because* it was not associated with the termination of

---

[3] As I read Part II of *Roth, supra,* at 572–575, which discusses the kind of "liberty" that is protected by the Due Process Clause of the Fourteenth Amendment, there are two quite different interests which may be implicated when a nontenured employee is discharged. First, the Court, 408 U. S., at 573, considers the individual's interest in " 'good name, reputation, honor, or integrity.' " It is with respect to this reputational interest that the Court indicates, *id.,* at 573 n. 12, that a name-clearing hearing is constitutionally required. That footnote does not tell us whether that hearing must precede the injury to reputation, and surely does not imply that such a hearing is the only remedy available to an employee whose constitutional right to due process has been violated.

Second, in the ensuing paragraphs, the *Roth* opinion considers the individual interest in avoiding "a stigma or other disability" that forecloses employment opportunities. With respect to this interest, the Court rather clearly indicates, *id.,* at 574, that no such stigma may be imposed without a "full prior hearing."

employment. *Paul* v. *Davis,* 424 U. S. 693, 709–710. Since allowing the employee to keep his job would eliminate (or at least lessen) the loss of liberty, due process requires that the hearing include the issue whether the facts warrant discharge.[4] In short, the purpose of the hearing, as is true of any other hearing which must precede a deprivation of liberty, is two-fold: first, to establish the truth or falsity of the charge, and second, to provide a basis for deciding what action is warranted by the facts.[5] Even when it is perfectly clear that the charge is true, the Constitution requires that procedural safeguards be observed. Cf. *Groppi* v. *Leslie,* 404 U. S. 496, 503. For these reasons, I disagree with the Court's assertion that the purpose of the hearing is "solely" to provide the person with an opportunity to clear his name.[6]

---

[4] Similarly, since disclosure of the charges is also part of the deprivation of liberty, *Bishop* v. *Wood,* 426 U. S. 341, 348, the hearing could properly include the issue whether the charges should remain confidential, or whether the written record should at least be modified to reflect a less one-sided description of the events.

[5] The Court states, *ante,* at 627:

"Where the liberty interest involved is that of conditional freedom following parole, we have said that the hearing required by the Due Process Clause in order to revoke parole must address two separate considerations. The first is whether the parolee in fact committed the violation with which he is charged, and the second is whether if he did commit the act his parole should, under all the circumstances, therefore be revoked. *Morrissey* v. *Brewer,* 408 U. S. 471, 479–480 (1972); *Gagnon* v. *Scarpelli,* 411 U. S. 778, 784 (1973). The fact that there was no dispute with respect to the commission of the act would not necessarily obviate the need for a hearing on the issue of whether the commission of the act warranted the revocation of parole."

This reasoning is equally applicable to a decision to revoke a person's employment for a stigmatizing reason. The fact that there is no dispute with respect to the commission of the act involved does not necessarily obviate the need for a hearing on the issue of whether employment should be terminated.

[6] The Court states, *ibid.,* that "the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his

Even, if I agreed with the Court that this was the sole purpose of the hearing, I could not agree with its holding that failure to demonstrate falsity is fatal to the employee's suit. Surely the burden should be on the State to show that failure to provide due process was harmless error because the charges were true. See MR. JUSTICE BRENNAN's dissent, *ante,* p. 629.[7] Moreover, failure to provide a hearing might give rise to damages unrelated to the possible outcome of the hearing.[8]

---

employment is *solely* 'to provide the person an opportunity to clear his name.'" (Emphasis added.) Earlier, *ibid.,* the Court states: "Assuming all of the other elements necessary to make out a claim of stigmatization under *Roth* and *Bishop,* the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.' 408 U. S., at 573." Of course, in neither *Roth* nor *Bishop* did the Court state or imply that a name-clearing hearing was the *only* remedy mandated by the Constitution.

[7] The Court's contrary approach would produce perverse results when the relief sought by the plaintiff includes an administrative hearing. To establish his right to such relief, the plaintiff would have to plead—and presumably prove—that the charges against him are false. But once it is established that the charges are false, there is no longer any reason to hold an administrative hearing on that subject.

This problem is squarely presented by this case because respondent did request such a hearing. At trial, respondent's counsel made the following statement:

"And therefore, he should be reinstated and he should be given a full hearing, an adversary hearing." App. 93a.

Under modern trial practice, no more formal request was necessary. The amended complaint had requested a declaratory judgment that "the action of defendants in terminating plaintiff's employment without charges and without a hearing [was] in violation of the Constitution . . . ," and had sought "such additional alternative relief as may seem to this Court to be just, proper and equitable." *Id.,* at 55a–56a. And, of course, Fed. Rule Civ. Proc. 54 (c) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

[8] See Judge Tone's thoughtful discussion of this problem in *Hostrop* v. *Board of Junior College Dist. 515,* 523 F. 2d 569, 578–580 (CA7 1975).

Today's holding may have the unfortunate effect of encouraging public officials to deny hearings when they feel confident of the correctness of their decision. But, in Mr. Justice Frankfurter's oft-quoted words:

> "That a conclusion satisfies one's private conscience does not attest its reliability. The validity and moral authority of a conclusion largely depend on the mode by which it was reached. Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it. Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done." *Anti-Fascist Committee* v. *McGrath,* 341 U. S. 123, 171–172 (concurring opinion).

As the last sentence in this quotation demonstrates, if state action has consequences sufficiently grievous to constitute a deprivation of constitutionally protected liberty, it is essential that fair procedures be followed for reasons that have nothing to do with the merits of the individual case. Today's holding is only a minor impairment of this principle. But the principle is one that admits of no compromise.

## II

Although the plaintiff does not have the burden of proving that he was discharged for a false reason, if he claims that the discharge deprived him of liberty, he does have the burden of proving that he was stigmatized. The District Court found that respondent did not meet that burden in this case. Under the proper standard of appellate review,[9] I cannot say that

---

[9] The general principle governing review of a District Court's findings of fact is clear:

"In applying the clearly erroneous standard to the findings of a dis-

finding was clearly erroneous, particularly when the record discloses that the respondent did not prove exactly what the unfavorable information in his file was, or exactly what information was disseminated to others.

The District Court found that unfavorable information from respondent's police record reached a prospective employer in only one instance. In that instance, a private employer was allowed to see the file with respondent's permission. The private employer then discharged respondent, who was on probationary status. The District Court expressly found that no information was released to any government agency to which respondent had applied. App. 113a–114a.[10] Thus, as far

---

trict court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*. The authority of an appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence. The question for the appellate court under Rule 52 (a) is not whether it would have made the findings the trial court did, but whether 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.' *United States* v. *United States Gypsum Co.*, 333 U. S. 364, 395 (1948)." *Zenith Corp.* v. *Hazeltine*, 395 U. S. 100, 123.

[10] The Court of Appeals found "every indication" that respondent would have obtained a job except for the contents of his file. *Velger* v. *Cawley*, 525 F. 2d 334, 335 (CA2 1975). Apart from the one instance of disclosure found by the District Court, this conclusion seems to have been based on an incident in which respondent was told he would be hired if his character investigation was satisfactory, and on the fact that he had passed numerous civil service examinations and received several job interviews but no jobs. The incident referred to by the Court of Appeals proves nothing about the effect of the contents of the file, since respondent testified that he refused to give that employer permission to inspect the file. App. 81a. The fact that respondent was unsuccessful in obtaining a job, despite numerous attempts, good examination scores, and several interviews, does not prove that he was stigmatized by information in his file since the District Court found that those employers had not had access to the file. Entirely apart from the file, there may have been

as the past effects of the unfavorable file are concerned, we have only the finding that one employer discharged respondent on the basis of the information. This does not in itself constitute a "stigma" as that term is used in *Board of Regents* v. *Roth,* 408 U. S. 564.[11]

The Court of Appeals also relied on the nature of the information itself as demonstrating that future release to employers would bar respondent from obtaining employment. *Velger* v. *Cawley,* 525 F. 2d 334, 336 (CA2 1975). Notwithstanding the broad discovery authorized by the Federal Rules of Civil Procedure, respondent failed to prove precisely what adverse information was in his personnel file. The revolver incident occurred sometime before respondent's 21st birthday, when he was still a trainee; as his counsel points out, it might well have been "a little horseplay"; and his subsequent conduct as a police officer was presumably good. There was no finding that the revolver incident was the official reason for discharge.[12] On this record, it cannot be said as a matter of law

factors which made respondent less attractive to employers than other available applicants.

[11] *Roth* recognizes two types of stigma. See n. 3, *supra.* First, the State's action "might seriously damage [the employee's] standing and associations in his community." 408 U. S., at 573. The release of information to a single employer at the employee's request can hardly be considered an injury to the employee's community standing. Second, the State's action might have the effect of "foreclos[ing] his freedom to take advantage of other employment opportunities." *Ibid.* It is not enough, however, to make him "somewhat less attractive to some other employers," for that "would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" *Id.,* at 574 n. 13. The fact that one employer considered the information a bar to employment does not necessarily mean that most other employers would have the same reaction. In short, on the basis of the entire record the District Court could find that this single incident of disclosure and its aftermath do not establish a sufficiently grievous harm to reputation to constitute a deprivation of liberty.

[12] The District Court did find that a private employer who inspected the file had "gleaned" from the file that this was the reason for the discharge.

that prospective employers would reject respondent's attempts to explain this incident and would uniformly refuse to hire him.

In the performance of our appellate function "[i]t is not enough that we might give the facts another construction, resolve the ambiguities differently, and find a more sinister cast to actions which the District Court apparently deemed innocent. . . . We are not given those choices, because our mandate is not to set aside findings of fact 'unless clearly erroneous.'" *United States* v. *Real Estate Boards*, 339 U. S. 485, 495–496.

I conclude that the Court of Appeals was incorrect in setting aside the District Court's findings of fact. Since those findings do not establish the existence of a stigma, the Court of Appeals erred in holding on this basis that a hearing was required.

## III

It is possible, however, that a hearing was required because the discharge deprived respondent of a property interest. The District Court rejected the claim that he had an entitlement to his job as a matter of state law, but the Court of Appeals found it unnecessary to reach this issue. I believe there is enough merit to the property claim to justify a remand to the Court of Appeals with directions to consider it.

In *Bishop* v. *Wood*, the plaintiff's job was "terminable at the will of either party irrespective of the quality of performance by the other party." 426 U. S., at 345 n. 9, and accompanying text. There was no right to state judicial review. In this case, however, the state law may afford the employee some protection against arbitrary discharge. According to the state case cited by Judge Gurfein, App. 37a, the Police Commissioner may terminate only "unsatisfactory employee[s]," [13] and his determination is reviewable in the

---

[13] In *Arnett* v. *Kennedy*, 416 U. S. 134, the employee could be discharged only for " 'such cause as will promote the efficiency of [the] serv-

state courts on an "arbitrary and capricious" standard. *In re Going* v. *Kennedy,* 5 App. Div. 2d 173, 176–177, 170 N. Y. S. 2d 234, 237–238 (1958), aff'd, 5 N. Y. 2d 900, 156 N. E. 2d 711 (1959); see *In re Talamo* v. *Murphy,* 38 N. Y. 2d 637, 345 N. E. 2d 546 (1976).[14] Unlike *Bishop,* in which a hearing would have been pointless because nothing plaintiff could prove would entitle him to keep his job, in this case the plaintiff may have had a right to continued employment if he could rebut the charges against him.[15]

---

ice,' " *id.,* at 151–152 (opinion of REHNQUIST, J.). Six Members of the Court were satisfied that that standard was sufficient to create an entitlement protected by the Due Process Clause. This respondent had a right to keep his job if he proved "satisfactory." I do not know whether the difference between Kennedy's entitlement and this respondent's is of constitutional dimensions, but the similarity to *Arnett* is sufficient to justify a remand.

[14] In *In re Going* v. *Kennedy,* the Appellate Division noted that the appointing officer had been delegated the authority to terminate "unsatisfactory employee[s]," and compared the probation period to an additional employment test designed to determine whether an employee is "able to meet all requirements or expectations in filling the position." 5 App. Div. 2d, at 178, 170 N. Y. S. 2d, at 239. The New York Court of Appeals, citing *Going* with approval, applied the "arbitrary and capricious" standard in *Talamo* to determine whether there was a "rational basis" for the police commissioner's decision to discharge a probationary police officer. 38 N. Y. 2d, at 639, 345 N. E. 2d, at 547. See also *In re Farrell* v. *New York City Police Dept.,* 44 App. Div. 2d 782, 355 N. Y. S. 2d 99 (1974), aff'd, 37 N. Y. 2d 843, 340 N. E. 2d 469 (1975).

[15] Cf. *Perry* v. *Sindermann,* 408 U. S. 593, 601:

"A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."

Even if respondent's entitlement is a sufficient property interest to trigger due process, he is not necessarily entitled to an elaborate adversary hearing. "Once it is determined that due process applies, the question remains what process is due." *Morrissey* v. *Brewer,* 408 U. S. 471, 481: But *at least* respondent would be entitled to notice of the charge against him and an opportunity to respond, if only in writing.

By directing the Court of Appeals to reinstate the District Court judgment, the Court summarily rejects this claim without the benefit of briefing or oral argument on the point.[16] I would remand the case to the Court of Appeals for consideration of this claim.

---

[16] Respondent did not abandon that claim in this Court. The portion of his brief cited by the majority, *ante,* at 628 n. 2, concerns the issue whether state law itself requires a hearing, see Brief for Respondent 14; this is an entirely different issue than whether state law creates a sufficient entitlement to trigger a federal right to a hearing. To preserve his right to a remand, the party prevailing below need not argue the merits of claims the lower court failed to reach. See generally *Dandridge* v. *Williams,* 397 U. S. 471, 475–476, n. 6.