

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-9-1996

# Ersek v. Twp of Springfield

Precedential or Non-Precedential:

Docket 95-1913

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Ersek v. Twp of Springfield" (1996). *1996 Decisions*. Paper 10.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/10

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 95-1913
_____

ELLEN ERSEK,

Appellant

v.

TOWNSHIP OF SPRINGFIELD, DELAWARE COUNTY;
ANTHONY J. GROSSO; LEE J. JANICZEK; THOMAS V. MAHONEY;
JOHN J. MCFADDEN; KITTY JURCIUKONIS; BERNARD E. STEIN;
JAMES DEVENNEY, Individually and in their Official
Capacities as Commissioners of the Township of
Springfield; GEORGE A. PAGANO, Individually and in
his Capacity as Former Commissioner of the Township
of Springfield; JO ANN HUNN, Individually and in her
Capacity as Former Commissioner of the Township of
Springfield; MICHAEL T. LEFEVRE, Individually
and in his Capacity as Township Manager of the
Township of Springfield; JOSEPH STUMPF, Individually
and in his Capacity as Chief of Police of the Township
of Springfield; JOHN W. RYAN, Individually and in his
Capacity as Police Detective of the Township of
Springfield; JAMES F. DEVANEY, Individually and in his Capacity
as Police Officer of the Township of Springfield

Amended per Court's order of 11/27/96.
_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
D.C. No. 92-cv-04673
_____

Argued:  June 3, 1996

Before: BECKER and MANSMANN, Circuit Judges, and
BROTMAN, District Judge.

(Filed December 9, 1996)
_____

HAROLD I. GOODMAN, ESQUIRE (ARGUED)
Raynes, McCarty, Binder,
 Ross & Mundy
1845 Walnut Street
Suite 2000
Philadelphia, PA   19103

Counsel for Appellant

DANIEL J. DIVIS, ESQUIRE (ARGUED)
Dean F. Murtagh, Esquire
German, Gallagher & Murtagh
200 South Broad Street
5th Floor
Philadelphia, PA   19102

Counsel for Appellees

_____

OPINION OF THE COURT
_____


BECKER, Circuit Judge.

William Ersek, a golf professional who suffered employment reverses incident to adverse newspaper reports about an investigation of his stewardship at a Township-owned golf course, brought a federal civil rights action, 42 U.S.C. § 1983, against the Township and a number of its top officials on account of false statements made by one of the officials about the matter.  Ersek's appeal from the grant of summary judgment in favor of the defendants raises a number of interesting questions under § 1983.  However, his claim founders because there is insufficient evidence to show that the false statements themselves caused him harm.  Accordingly, we will affirm the grant of summary judgment for defendants.

I.

From 1963 until the end of 1991, Ersek was employed as the golf professional at a municipally owned and operated golf course, the Springfield Country Club, in Delaware County, Pennsylvania.  From 1963 until 1987, Springfield Township employed Ersek pursuant to successive one-year employment contracts.  In 1987, Ersek signed a four-year contract.  Ersek's duties as the Springfield golf pro were varied:  he managed the pro shop and snack bar at the course, supervised the other employees at the course, and collected the fees for playing the course and renting the golf carts.

During the summer of 1989, a Township employee, responding to complaints by Ersek that construction on the golf course had resulted in a lower volume of paying golfers, counted the golfers on the course.  The Township employee noticed that the number of golfers actually on the course did not correspond to the number of golfers Ersek reported to the Township.  Michael Lefevre, the Township Manager and a defendant in the case, noticed the same discrepancies.  The matter was referred to the Township police.  After some investigation in the fall of 1989, the police decided to conduct surveillance during the spring and summer of 1990.  The police inspection uncovered further

discrepancies.

In August 1990, the police and Township employees notified the Township Board of Commissioners ("the Board"), a defendant in the case, of the results of their probe. Until that time, no member of the Board knew of the investigation. Bernard Stein, the President of the Board and also a defendant, informed the police that the Board would be willing to prosecute Ersek criminally if there were sufficient evidence to do so. After obtaining a search warrant, the police carried out a search of the pro shop and seized records stored therein. Ersek volunteered to the police that he kept additional records at his home. The police obtained a second search warrant and then made a search of Ersek's home, seizing documents stored there as well.

The Board discussed the Ersek case at a public meeting six days after the police searches. Stein read a public statement, earlier approved by the entire Board in executive session, concerning the case. Lefevre had also attended the executive session. The statement falsely claimed that the Board had not only been aware of the investigation since its outset but also had directed the entire undertaking. The admitted reason for the fabrication was to mislead the Township residents into believing that the Board had been pro-active in overseeing the golf course. The statement did not, however, refer to Ersek nor contain other false claims. After the Township meeting, local newspapers, and also The Philadelphia Inquirer, reported on the investigations and ran stories referring to Ersek by name.

Ersek had been suffering from health problems and, in the wake of the searches, did not return to work for several months. Although the Township continued to pay him for the time he spent away from the course, it moved to restructure the management of the course. For instance, the Township took control of the pro shop and responsibility for course employees.

Nearing the contract's expiration in 1991, the Township offered to renew Ersek's contract, but under substantially altered terms. The salary under the proposed contract would have been significantly less than that of the existing contract. Ersek refused to accept the terms of the proposed contract, and the Township hired a different golf professional. Ersek then sought job interviews with other country clubs in the area, but to no avail. Ersek claims that the cloud placed over his head by the publicized investigation made securing employment at another golf course impossible.

Ersek brought suit against the Township and against a number of Township officials alleging a variety of federal civil rights and pendent state law claims. In an initial order, the district court granted the defendants' motion to dismiss Ersek's substantive due process claims, and ordered Ersek to file an amended complaint to address deficiencies with respect to some of the other claims. See Ersek v. Township of Springfield, Delaware County, 822 F. Supp. 218 (E.D. Pa. 1993). In so doing, the court held that the Township did not act arbitrarily or capriciously in offering Ersek a renewed contract under markedly different terms; considering Ersek's ill health and age (Ersek was 59 years old at the time), the court found it not unreasonable for the Township

to act as it did.  Ersek subsequently dismissed a number of defendants and abandoned a number of claims voluntarily.

In a later order, the district court granted the remaining defendants' motion for summary judgment as to all existing federal law claims.  Relying primarily on Paul v. Davis, 424 U.S. 693 (1976) and Clark v. Township of Falls, 890 F.2d 611 (3d Cir. 1989), the court held that Ersek could not make out a claim for a violation of procedural due process because he could not show that the Township's actions infringed on a constitutionally protected interest.  Specifically, the district court held that the fabrications contained in the Township's public statement did not harm Ersek to the extent that they violated a liberty interest in his reputation.  And, even if those fabrications had harmed him, the court continued, Ersek failed to adduce evidence that he suffered more than mere financial harm so as to rise to liberty interest.  The district court also dismissed the pendent state law claims with leave to file them in state court.

Ersek appeals from the district court's final order granting summary judgment, and includes in his appeal the court's order dismissing his substantive due process claims.  The case raises both federal questions and pendent state law claims, and the district court properly exercised its jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367; we exercise appellate jurisdiction over this appeal of a final district court order pursuant to 28 U.S.C. § 1291.  Our review is plenary as to the appeal both from the order granting summary judgment and that granting the motion to dismiss.

II.

We must perforce begin by considering whether Ersek had a protectible liberty interest sufficient to trigger due process protections.  The Supreme Court, in the seminal case of Wisconsin v. Constantineau, 400 U.S. 433 (1971), recognized that an individual has a protectible interest in reputation.  It stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."  Id.at 437.  The Court then went on to strike down a state statute that failed to provide an individual with the opportunity to challenge a government official's posting notice that no one may provide alcoholic beverages to that individual because of his problems with alcohol.  Id. at 439.  The inquiry is, however, more complicated today in light of intervening case law.

For government action to infringe the "reputation, honor, or integrity" of an individual, that government action first must involve a publication that is substantially and materially false.  See Codd v. Velger, 429 U.S. 624, 627 – 29 (1977); Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 82 (3d Cir. 1989).  The principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is a hearing to clear his name.  See Codd, 429 U.S. at 627; Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 & n.12 (1972).  If there is no factual dispute that "has some

significant bearing on the employee's reputation," then a name-clearing hearing would serve no useful purpose. See Codd, 429 U.S. at 627. In other words, the disputed or false statements must harm the plaintiff.

In this case, Ersek claimed that false statements impaired his opportunities for future employment as a golf pro. Ersek has adduced ample evidence to create a genuine issue of material fact as to whether the publicity about the fact of an investigation did such harm. See McKnight v. Southeastern Pennsylvania Trans. Auth., 583 F.2d 1229, 1236 (3d Cir. 1978) (holding that harm to future employment possibilities may show sufficient stigma to allow a claim for a violation of a liberty interest). That the publicity may have harmed Ersek is not, however, the end of this inquiry, because the harm must be caused by the falsity of the statements and the fact of the investigation is true. Thus, we must now determine whether the false statements made by the Township affected Ersek's reputation.

It is undisputed that the public statement announcing the investigation at the Township golf course contained the false statement that the Board had known about and directed the investigation from its outset. Ersek contends that a public statement including such a fabricated claim could give rise to the false impression that the probe was a serious, non-routine matter. It is not usual for a legislative body to be engaged in the investigation of possible criminal activities. In Ersek's submission, anyone learning of the Board's (false) involvement could conclude that Ersek's alleged misdeeds were of an unusual nature calling for extraordinary measures, and such a conclusion would have a significant bearing on Ersek's reputation because more serious allegations would likely engender more serious harm to an individual's reputation. Had the statement only mentioned the police involvement and omitted the Board's putative activity, the argument continues, there would be no cause to overstate the seriousness of the allegations.

We are unconvinced. As we have stated, Ersek must show that the false comments made by the Township caused him some harm. The problem with Ersek's argument is that the only false statements were that the Board had been heavily involved in the investigation at the golf course. Notwithstanding Ersek's protestations, we cannot imagine that such fabrications caused more harm than would a statement that truthfully said that only the police and a few Township officials were investigating him. Should Ersek receive the hearing to which he claims he is entitled, the most for which he can seemingly ask in the hearing is the opportunity to show that the investigation was not conducted by the Board and that any inference that the investigation was unusual is incorrect. That hearing could not be used to prove Ersek's innocence. He would still have hanging over his head the cloud of a police investigation. It seems fanciful that any golf course that refused to hire Ersek because of the statement actually given would now consider hiring him because only the police (and not the Board) were investigating him.

In sum, the false statements in this case simply have not caused Ersek harm that a name-clearing hearing could correct. It was the fact of the investigation, not who conducted the investigation, that might have injured Ersek's reputation. Because Ersek cannot dispute the fact of the investigation, a name-clearing hearing would be of no consequence to him. AccordHomar v. Gilbert, 89 F.3d 1009, 1021 – 22 (3d Cir. 1996) (denying a procedural due process claim, in part based on the reasoning that the truthful disclosure of a pending investigation did not stigmatize the plaintiff); S & D Maintenance Co. v. Goldin, 844 F.2d 962, 970 – 71 (2d Cir. 1988) (same).

## III.

Because we conclude that no genuine issue of material fact exists as to Ersek's claim that the false statements made by the Township stigmatized him, the order of the district court granting the defendants' motion for summary judgment will be affirmed.