USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 97-2010

 JOSEPH HARDEMON,

 Plaintiff, Appellant,

 v.

 CITY OF BOSTON,

 Defendant, Appellee.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge]
 [Hon. Joyce L. Alexander, U.S. Magistrate Judge]
 ____________________
 

 Before

 Torruella, Chief Judge,

 Bownes, Senior Circuit Judge,

 and Stahl, Circuit Judge.

 ____________________

 Richard J. Fallon for appellant.

 Kevin S. McDermott, Assistant Corporation Counsel, City of
Boston Law Department, with whom Merita A. Hopkins, Corporation
Counsel, and Christian Na were on brief for appellee.

 ____________________

 May 8, 1998

 ____________________

 Per Curiam. In this diversity jurisdiction case,
plaintiff-appellant John Hardemon appeals from an adverse decision
of a tribunal of the Boston Police Department (BPD). Defendant-
appellee is the City of Boston. In order to understand the present
posture of the case, it is necessary to follow its procedural path.
 In October of 1988 Hardemon was a recruit police officer
at the Boston Police Academy. He was discharged from the academy
because of unsatisfactory character and failure to adhere to the
standard of performance required of Boston Police officers. 
Hardemon sued the City in January of 1989 in the Massachusetts
Superior Court alleging breach of contract, racial discrimination,
libel, reckless infliction of emotional distress, invasion of
privacy and due process violations by the BPD. The case was
removed to the United States District Court for the District of
Massachusetts in February, 1989.
 The only claim left extant for trial was a denial of
substantive due process because of the failure of the BPD to advise
Hardemon of his post-termination right to appeal. All the other
claims were waived or found by the district court to be not
triable.
 In July 1992, a jury found that Hardemon had not been
informed of his right to a post-termination appeal hearing. The
district court then issued an order which in pertinent part states:
 1. That, within sixty days of the date of
 this order, the City of Boston shall petition
 the Massachusetts Criminal Justice Training
 Council to hold a hearing to consider: (a)
 whether Joseph Hardemon was properly
 dismissed; and (b) if so, whether he ought to
 be reinstated at the first available
 opportunity.

 Pursuant to the court's order a BPD disciplinary hearing
was held in February 1996 before a tribunal. The tribunal decided
that the dismissal was justified and supported by a preponderance
of the evidence. Hardemon sought judicial review pursuant to Mass.
Gen. Laws ch. 249, 4 (West, 1988), which is entitled "Action in
the nature of certiorari." The parties agreed to have the matter
tried before a magistrate judge. She found that there was no legal
error in the tribunal's decision; an opinion issued on July 23,
1997.
 Prior to her decision on the merits, the magistrate judge
denied the City's motion to dismiss for lack of federal
jurisdiction.
 There are two issues before us: jurisdiction, and
whether the BPD tribunal erred as a matter of law in not accepting
as an exhibit a letter of recantation by the woman who brought the
initial complaint against Hardemon.
 Jurisdiction
 Initially we were tempted to bypass the jurisdictional
issue because the City easily prevails on the merits. See Rojas v.
Fitch, 127 F.3d 184, 187 (1st Cir. 1997), petition for cert. filed,
(U.S. Mar. 18, 1998) (No. 97-1550); Institut Pasteur v. Cambridge
Biotech Corp., 104 F.3d 489, 492 (1st Cir.), cert. denied, 117 S.
Ct. 2511 (1997); Hachikian v. FDIC, 96 F.3d 502, 506 n.4 (1st Cir.
1996); United States v. Parcel of Land with Bldg., App. and Imp.,
928 F.2d 1, 4 (1st Cir. 1991). The Supreme Court, however, has
recently issued a decision in which a plurality disapproves such an
approach. See Steel Co. v. Citizens For A Better Environment, 118
S. Ct. 1003, 1012 (1998). The various opinions in the case, read
as a whole, are not entirely clear as to whether (or to what
extent) Steel Co. undermines our earlier practice. In all events,
having noted the red flag, we see no need in this case to test the
outer limits of the Court's tolerance, and, thus, we turn to the
jurisdictional issue. 
 At the outset we note that diversity of citizenship is
not questioned. Hardemon was a resident of Baltimore, Maryland, at
the time the complaint was filed. The focus of the City's attack
on jurisdiction is the "amount in controversy." The City argues
that Hardemon's affidavit filed in response to the City's motion to
dismiss for lack of jurisdiction failed, as a matter of law, to
establish the requisite $50,000 amount in controversy. The City
argues that the district court erred in its reliance on Department
of Recreation and Sports of Puerto Rico v. World Boxing Ass'n, 942
F.2d 84 (1st Cir. 1991), for its finding that Hardemon's affidavit
sufficed to meet the "amount in controversy" requirement. (The
present requirement is $75,000; at the time the complaint was filed
the amount was $50,000.)
 We reject this argument. There is no doubt that the
amended complaint met the "amount in controversy" requirement. The
pertinent paragraphs of the affidavit state:
 6. As a result of the wrongful termination, I
 have lost wages and fringe benefits, including
 but not limited to vacation pay, medical
 insurance coverage, tuition benefits and
 separation benefits.

 7. My recollection is that my monthly salary
 was approximately $1,980 while I was at the
 Academy.

 8. It is my belief that if I had been
 graduated from the Academy and had become a
 full fledged police officer, that my salary
 would have been increased substantially but
 that in any event, I would have been earning
 no less than the $1,980 which I earned monthly
 while at the Academy.

 9. Based on the itemized losses described
 above, the total value of the financial loss
 incurred as a result of the termination,
 exceeds $50,000.

 World Boxing Ass'n, 942 F.2d 84, was an action for
declaratory judgment. We pointed out that in such an action the
amount in controversy is measured by the value of the object of the
litigation. We held that, "[t]he amounts actually mentioned in the
record for airfares and hotel bills and for the services of a
handwriting expert have nothing to do with the value of the right
the Commission is seeking to vindicate in this lawsuit." Id. at
88.
 The instant case is not a declaratory judgment action. 
It is an action alleging wrongful termination. Secondly, the
magistrate judge did not cite to World Boxing Ass'n for the
proposition that, "Hardemon's affidavit alleging losses in backpay
satisfied his burden of demonstrating the requisite jurisdictional
amount." City's Br. at 12. We quote from the opinion below: 
 As a general matter, plaintiff's burden of
 proving it meets the required amount in
 controversy is satisfied by simply alleging
 the amount in the complaint. Dep't of
 Recreation & Sports of Puerto Rico v. World
 Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991). 
 However, there is long standing precedent that
 once diversity jurisdiction has been
 challenged, the burden shifts from merely
 averring the amount in controversy to
 substantiating the amount in controversy. SeeGibbs v. Buck, 307 U.S. 66, 72 (1939);
 Frederick v. ConAgra, 713 F. Supp. 41, 47 (D.
 Mass. 1989). When faced with a motion to
 dismiss, plaintiff has the burden of proving
 jurisdiction "by showing that it does not
 appear to legal certainty that its claim is
 for less than the jurisdictional amount." 
 Frederick, 713 F. Supp. at 47. Plaintiff may
 meet this burden by amending the pleading or
 by submitting affidavits which sufficiently
 substantiate the alleged amount in
 controversy. Kenney v. Hoover, 909 F. Supp.
 34, 36 (D.Mass. 1995).

(Emphasis added.)

 World Boxing Ass'n was cited only for the proposition
that the "amount in controversy" may be satisfied by alleging it in
the complaint. It was not the court below that erred in relying on
World Boxing Ass'n but counsel for the City who misread the
district court's opinion. This error is compounded by the City's
conversion of a statement in a declaratory judgment case about the
value of the right sought into a general diversity rule that what
matters is the value of the right sought, not the amount of damages
claimed. Based on this infirm premise the City argues that,
"Hardemon's allegation of loss of back pay had nothing to do with
the right he was seeking to vindicate in his complaint to the
district court, to wit, the right to clear his name." City's Br.
at 13. But there is nothing in the complaint asserting Hardemon's
right to clear his name. Counts one through fourteen were factual
assertions and background information. There is no mention in any
of these counts that Hardemon wanted to clear his name. We quote
the balance of the complaint:
 15. The actions of the Panel were arbitrary,
 capricious, were not supported by substantial
 evidence and relied heavily on hearsay
 evidence which was not supported by competent
 corroborative evidence.

 16. The Panel did not have any written
 guidelines or objective criteria which would
 have assisted it in reaching a fair and
 impartial decision based on the evidence. 
 Instead, the members of the Panel were
 influenced by bias in favour of the defendant,
 which is the employer of all of its members.

 17. The decision does not reflect a careful
 and impartial weighing of the evidence and is 
 arbitrary, capricious and against the evidence
 and the substantial weight of the evidence.

 WHEREFORE, plaintiff prays that an order
 issue from this Honorable Court to the
 defendant City of Boston, directing it to
 certify to this court, a true and complete and
 perfect record of all proceedings before the
 Panel, together with a transcript of the
 evidence and all exhibits and findings of fact
 made by the Panel, to the end that any errors
 of law may be determined and corrected by this
 court and to enable the court to determine
 whether the decision was warranted as a matter
 of law upon the evidence.

 Plaintiff further prays that the decision of
 the Panel and of the defendant City of Boston
 be quashed and reversed, that this court order
 the defendant to admit the plaintiff to the
 next available training class at the Academy
 and grant such other and further relief as may
 appear equitable and appropriate.

 The City cites to a case holding, inter alia, that "a
nonpermanent municipal employee is entitled to a termination
hearing for the sole purpose of clearing his name and thereby
restoring his reputation." Grant v. Police Comm'r of Boston, 387
N.E.2d 178, 180 (Mass. App. Ct. 1979). The quote by the City from
Grant is taken out of context. The pertinent part of the opinion
reads as follows:
 Termination alone is not sufficient basis
 for a claim of a denial of due process
 rights. . . . Due process affords protection
 against damage to a person's standing and
 associations in the community, and against
 actions by an employer which foreclose
 employment opportunities because these are
 liberty interests within the reach of the
 Fourteenth Amendment. . . . When these
 liberty interests have been violated, a
 nonpermanent municipal employee is entitled to
 a termination hearing for the sole purpose of
 clearing his name and thereby restoring his
 reputation. A violation occurs if an employer
 "creates and disseminates a false and
 defamatory impression about the employee in
 connection with his termination . . . ." Coddv. Velger, 429 U.S. 624, 628, 97 S. Ct. 882,
 884, 51 L. Ed. 2d 92 (1977). However, because
 of the limited purpose of the hearing to clear
 one's name, it is a condition precedent to the
 hearing that the employee deny the charges. 
 "If he does not challenge the substantial
 truth of the material in question, no hearing
 would afford a promise of achieving that
 result for him." Codd, 429 U.S. at 627-28, 97
 S. Ct. at 884. . . . The plaintiff's failure
 to challenge the charges suggests that he does
 not claim that the defendant created false
 information.

 Not only must there be a creation of false
 information by the employer, there also must
 be a dissemination of that information by the
 employer before there is a depreciation of an
 employee's liberty interests. . . . The
 protection of liberty interests is violated
 neither by the presence of adverse information
 in a personnel file, standing alone . . . ,
 nor by an involuntary termination that has 
 made future employment difficult to obtain
 . . . .

Id. at 180 (citations omitted).

 The analysis in Grant was based on a claim that the
termination at issue offended substantive due process because it
"damage[d] [Grant's] standing and associations in the community,
and . . . foreclose[d] employment opportunities." Id. It was 
"[w]hen these liberty interests have been violated," id., that "a
nonpermanent employee is entitled to a termination hearing for the
sole purpose of clearing his name and thereby restoring his
reputation," id. Hardemon, however, alleged a procedural due
process violation on the basis of the City's failure to inform him
of his right to appeal the termination decision. He was not
seeking to clear his name on the basis of the liberty interests
recognized in Grant. Grant is of no avail to the City.
 There is an additional reason why Hardemon's affidavit
relying on back pay to meet the amount in controversy requirement
was sufficient. After the jury verdict finding a substantive due
process violation, the district court ordered the City to hold a
hearing to consider whether Hardemon was properly dismissed "and
(b) if so, whether he ought to be reinstated at the first available
opportunity." Obviously, if Hardemon were reinstated he would be
entitled to back pay.
 We affirm the holding of the district court that
Hardemon's affidavit sufficed to meet "the amount in controversy"
jurisdictional requirement.
 In the district court, the City argued that a state
statute vesting jurisdiction in the Massachusetts Superior Court of
this type of action precluded federal jurisdiction. The City has
wisely decided not to pursue this challenge on appeal.
 The Merits
 The only substantive issue before us is whether it was
legal error for the BPD tribunal to refuse to accept as an exhibit
a recantation letter from Agnes Cansler dated August 31, 1990, and
whether such refusal resulted in substantial prejudice to Hardemon. 
Unlike the district court we are not called upon to determine
whether the BPD tribunal's decision should be affirmed. The
magistrate judge affirmed the tribunal's refusal to reinstate
Hardemon to the Boston Police Department, ruling that, "there was
no legal error in the Tribunal's decision." Our focus is narrowed
to the sole question of whether it was legal error for the BPD
tribunal to refuse to admit the letter of recantation into
evidence. Hardemon's appeal is based solely on this issue.
 In reviewing the tribunal opinion, the magistrate judge
stated:
 Ms. Cansler's letter was not admitted because
 its authentication was not established.4 
 Further, there was no evidence that the letter
 was ever received by the legal department of
 the Boston Police and thus could not be
 considered during the investigation.

The footnote states:

 4 Plaintiff contends that Ms. Cansler's
 whereabouts could not be determined at the
 time of the hearing.

These rulings and findings, if so they be, are not given any
deference by us.
 The relevant facts are as follows. Close to midnight on
July 11, 1988, Recruit Officer Hardemon went to a house in Jamaica
Plain, Massachusetts, to support his friend Timothy Ellerbee in a
dispute with in-laws. The dispute degenerated into name-calling
and rock throwing. Agnes Cansler armed herself with a baseball bat
to defend herself from the Ellerbees. Hardemon took the baseball
bat away from her. On July 13, Agnes Cansler filed a complaint
with the police department, which stated: 
 About 7 p.m. there was a family dispute
 involving inlaws [sic] at the home of the
 complainant, which was responded to by Area E
 officers. As a result of that fight, Recruit
 Officer Joe Hardemon, best friend of one of
 the inlaws involved earlier, Tim Ellerbe, of
 2031 Columbus Ave., came to Ms. Cansler's home
 with approximately 9 other B/Ms. These young
 men came to continue the fight started
 earlier. After James Ellerbe (Tim's brother)
 pushed and hit Ms. Cansler's mother, Thelma
 Harris, 61 years, Ms. Cansler picked up and
 was swinging a bat in self-protection, but she
 did not hit anyone with it. Some members of
 the group with Recruit Officer Hardemon were
 throwing bottles. Recruit Hardemon was
 encouraging the group to attack Ms. Cansler by
 shouting, "Why don't you Bumrush her!!!" A
 neighbor called the police and several
 officers from Area E responded. A black
 officer spoke with Recruit Hardemon and told
 him that he would see him at the Academy.

 Ms. Cansler feels that Recruit Hardemon
 should not have joined into this family
 problem and should definately [sic] not have
 taken an active part in the fight, but, as a
 police officer, should have tried to calm or
 prevent the incident. 

 (Note: as a result of this fight, Ms.
 Cansler's daughter, Lasanya, 16 years,
 sustained a minor injury to her face. This
 was inflicted by James Ellerbe.)

The letter of recantation states:

 To the Legal Department of Boston Police,
 I, Agnes Cansler made a complaint about Joe 
 Hardemon on Boylston St. Jamaica Plain on
 July 12, 1988. He was not involved in that
 dispute. On 7-12-88 he was coming to visit my
 sister and I thought he was coming to cause
 trouble with Timothy Ellerbee and Family
 because they were friends.

 Someone in the crowd said Bumrush Agnes and
 everybody thought Joe said it but he didn't,
 it was one of the Ellerbees that said it.

 I just want to inform you that we are still
 speaking as friends and I think he would make
 a good police officer.

 If you have any questions you can call me at
 (617)282-5103. The address is
 5 Greenmount St. #2
 Dor. MA 02125

 Thank You.

 Agnes Cansler

 Sergeant Devlin was assigned to investigate the matter. 
He found that Hardemon lied about two matters concerning Hardemon's
conduct prior to the incident itself. The BPD tribunal found that
there was ample evidence that Hardemon had made untruthful
statements to Sergeant Devlin during the investigation. The
tribunal also concluded that Hardemon was improperly involved in an
altercation involving family and friends. Agnes Cansler is the
sister of Cheryl Harris who had a relationship with Hardemon and
was the mother of his twin daughters.
 Our scope of review is restricted by the issue which was
framed by Hardemon: did the BPD tribunal commit legal error on
excluding the letter of recantation? Mass. Gen. Laws Ann. ch. 30,
 11(2) (West 1992) provides:
 (2) Unless otherwise provided by any law,
 agencies need not observe the rules of
 evidence observed by courts, but shall observe
 the rules of privilege recognized by law. 
 Evidence may be admitted and given probative
 effect only if it is the kind of evidence on
 which reasonable persons are accustomed to
 rely in the conduct of serious affairs. 
 Agencies may exclude unduly repetitious
 evidence, whether offered on direct
 examination or cross-examination of witnesses. 
 (Emphasis added.)

 The core finding of the BPD tribunal was:

 12. Based on the findings and recommendations
 of the investigation, Mr. Hardemon was
 terminated from the Boston Police Department
 on October 6, 1988 for becoming involved in a
 situation involving family and friends
 regarding the events set forth in Complaint
 #4273, for untruthfulness relative to his
 participation in the investigation of those
 events, and for conduct unbecoming a police
 officer in reference to the two aforementioned
 charges.

 We agree with Hardemon that the Chief Hearing Officer
excluded the exculpatory letter at the hearing on the grounds of
relevance. The BPD tribunal later gave the following reasons in
writing for excluding the letter:
 First, Ms. Cansler's letter was not admitted
 into evidence because its authenticity could
 not be established. Furthermore, there is no
 proof that the addressee, the Legal Department
 of the Boston Police ever received it. In
 fact, when Captain Dunford was presented with
 the letter on the witness stand, he stated
 that he had never seen it before.

 We do not agree with Hardemon that the letter was
relevant. The letter had no bearing on the findings by Sergeant
Devlin that Hardemon had lied to Devlin during the investigation of
Hardemon's conduct on the day of the incident. Nor did the letter
state that Hardemon was not present during the altercation at
Jamaica Plain. As the City correctly points out, "[t]he issue at
the hearing was whether Hardemon was properly terminated based on
the findings from that investigation, not from the allegations by
Agnes Cansler." City's Br. at 17 (emphasis added). The letter was
tangential at best to the determination that the tribunal was
making.
 But even if the letter was somehow relevant, it was
worthless as evidence. A comparison between the complaint process
and the letter makes this clear. After she filed the complaint,
Ms. Cansler was questioned by the investigating police officer
about its contents. The subsequent recantation letter did not give
the investigators any opportunity to probe her new allegations. 
They could not ask her in particular why she had originally made a
police complaint that she now claims was wholly false, or why her
current version of events is any more likely to be true. The
letter was simply unreliable; it was not "the kind of evidence on
which reasonable persons are accustomed to rely in the conduct of
serious affairs." Mass Gen. Laws Ann. ch 30, 11(2). 
 There appears to have been no effort made to have Agnes
Cansler testify at the hearing or to take her deposition for use at
the hearing.
 We rule that it was not legal error for the BPD tribunal
to exclude the recantation letter from evidence.
 Judgment for the defendant. No costs for either party.
 - Concurring Opinion Follows -
 BOWNES, Senior Circuit Judge (concurring). I write
separately because I think that the court has brushed aside the
holding of Steel Co. v. Citizens For A Better Environment, 118 S.
Ct. 1003 (1998), and its effect on our approach to difficult
jurisdictional issues in the future. The panel says that it is
"not entirely clear as to whether (or to what extent) Steel Co.undermines our earlier practice." It is entirely clear to me that
the Court has generally prohibited our prior practice of avoiding
difficult jurisdictional issues when the case could alternatively
be resolved easily on the merits in favor of the same party.
 A full understanding of the Court's view on this issue
requires a close reading of Justice O'Connor's concurrence, as well
as Justice Scalia's majority opinion. 
 In its majority opinion, the Court noted that several
courts of appeals 
 find it proper to proceed immediately to the
 merits question, despite jurisdictional
 objections, at least where (1) the merits
 question is more readily resolved, and (2) the
 prevailing party on the merits would be the
 same as the prevailing party were jurisdiction
 denied. . . .

 We decline to endorse such an approach
 because it carries the courts beyond the
 bounds of authorized judicial action and thus
 offends fundamental principles of separation
 of powers.

118 S. Ct. at 1012 (citations and footnote omitted).
 Justice O'Connor, joined by Justice Kennedy, made it
clear that she joined the majority opinion, and that she explicitly
"agree[d]" with the general rule that "federal courts should be
certain of their jurisdiction before reaching the merits of a
case." Id. at 1020 (emphasis added). But then she went on to
note, "[a]s the Court acknowledges, . . . several . . . decisions
'have diluted the absolute purity of the rule that Article III
jurisdiction is always an antecedent question.'" Id. (quoting id.at 1016). Finally, Justice O'Connor explained that she was writing
separately "to note that, in [her] view, the Court's opinion should
not be read as cataloging an exhaustive list of circumstances under
which federal courts may exercise judgment in 'reserv[ing]
difficult questions of . . . jurisdiction when the case
alternatively could be resolved on the merits in favor of the same
party.'" Id. (quoting Norton v. Matthews, 427 U.S. 524, 532
(1976)). 
 Reading the majority and concurring opinions in Steel Co.together, there is a Supreme Court majority in support of the
general rule that "federal courts should be certain of their
jurisdiction before reaching the merits of a case." Id. at 1020
(O'Connor, J., concurring); see id. at 1012, 1016 (majority
opinion). While this general rule is perhaps not "absolute[ly]
pur[e]," the circumstances that would warrant an exception to the
rule seem extremely rare. See Steel Co., 118 S. Ct. at 1014-15
(majority opinion); id. at 1020 (O'Connor, J., concurring). It
appears that Justices O'Connor and Kennedy would dilute the general
rule only to the extent that they believe the cases discussed in
the majority opinion, id. at 1014-15, do not exhaust the rare
circumstances in which an exception would be appropriate, id. at
1020. 
 I do not know what the panel expects to achieve by
casting doubt on the holding and effect of Steel Co. As Court of
Appeals judges we have a duty to follow it, not avoid it.